## BATKIEWICZ v. SEAS SHIPPING CO., LIMITED.

District Court, S. D. New York.

Nov. 28, 1945.

See, also, 54 F.Supp. 789.

Paul C. Matthews, of New York City (Archibald F. McGrath, of New York City, of counsel), for libellant.

Frank V. Barns and W. O. Cook, both of New York City, for respondent.

COXE, District Judge.

This is a suit for alleged wrongful death of Frank J. Batkiewicz who lost his life at sea by jumping overboard on June 30, 1941, while a passenger on the S. S Robin Locksley, a vessel owned and operated by the respondent.

The libel alleges that the death was caused by the negligence of the captain and officers of the vessel in failing to protect or guard the deceased after knowledge that he was in a "mentally deficient" condition.

The deceased had previously been a seaman on the S. S. Robin Moor, which was torpedoed and sunk by a German submarine on May 21, 1941, while on a voyage from New York to South Africa. Before the sinking occurred the passengers, officers and crew were allowed to leave the vessel, and after thirteen days in lifeboats were picked up on June 2, 1941, by the S. S. City of Wellington, a British ship, and brought to Capetown, South Africa, where they arrived on June 16, 1941. At Capetown, arrangements were made through the United States Consul to return the officers and crew to this country. The deceased, together with twenty others from the Robin Moor, left Capetown on Friday, June 27th, as passengers on the Robin Locksley, destined for Boston. On the Monday following, June 30th, at about 12:20 p. m., the deceased was reported missing, and after a thorough search of the vessel and the immediate vicinity, it was concluded that he had taken his own life by jumping overboard.

It is clear from the evidence that the deceased was in a depressed mental condition during the eleven days he was at Capetown prior to his leaving on the Robin Locksley on June 27th. This condition can readily be accounted for by the thirteen days of exposure in the lifeboat after the sinking of the Robin Moor.

It is also clear that the deceased's condition rapidly deteriorated after he boarded the Robin Locksley. He became highly nervous and morose. He was continually muttering to himself. He had hallucinations of various kinds. He said that he was "going over the side," and on Sunday

night, June 29th, he attempted three times to take his own life but was prevented from doing so by his roommates.

The deceased's condition was brought to the attention of the Master of the Robin Locksley on Sunday evening, June 29th, by Taylor and Phillips, the second mate and second engineer, respectively, of the Robin Moor, both of whom were passengers on the Robin Locklsey; and the seriousness of the deceased's condition must have been apparent to the master when he was summoned to the hospital at 2 o'clock in the early morning of Monday, June 30th, to see the deceased. Two of the deceased's roommates in the hospital testified that they told the master at that time that the deceased had just made three attempts at suicide and that he should be placed under guard. The master denied in his testimony that he was told of the three suicide attempts, but stated that he sat beside the deceased for about a half hour and "pacified him a little". He did, however, place a guard outside of the door of the hospital on Sunday night, but this guard was withdrawn early on Monday morning and no further watch was thereafter kept of the deceased prior to his disappearance.

The deceased came into the dining room of the vessel at about 12 o'clock noon on June 30th, sat down and partly finished drinking a bowl of soup, after which he got up from the table, walked away, and was not again heard from.

I think a guard should have been placed on the deceased and maintained continuously from the time Taylor and Phillips came to the master on Sunday evening and told him of the deceased's condition. If the master then had any doubt of the wisdom of such action, surely, there was no room for doubt after he was summoned to the hospital at 2 a. m. on Monday and saw for himself the condition of the deceased and talked to the other men in the room. Yet the guard placed outside the hospital door on Sunday night was withdrawn early Monday morning, and the deceased was thereafter left to go his own way without any protection whatever. This failure to guard the deceased during Monday constituted neglect for which the respondent is to be held responsible.

This brings me to the question of damages. The deceased was born on July 20, 1917, and had been going to sea since April 1940. He was unmarried, and was survived by his parents and a number of brothers and sisters. His mother testified that on his first voyage at sea he sent home to her $370 in cash, and on the second voyage $250.

The family is a large one, and the father is presently employed by the Pennsylvania Railroad.

The statute, 46 U.S.C.A. § 762, allows "fair and just compensation for the pecuniary loss sustained." The only evidence of this pecuniary loss is found in the mother's testimony that she received during a period of fourteen months $620, and it may well be doubted whether such contributions would have continued for any prolonged period of time.

On all the evidence, I think that an award to the mother of $4,000 is fair and just compensation.

There may accordingly be a decree for the libellant for $4,000,—that is an award to the mother for the death of Frank J. Batkiewicz.