FORREST M. HASTINGS, Appellant, *v.* CHRYSLER CORPORATION et al., Respondents.

First Department, March 15, 1948.

*Louis Rothbard* of counsel (*Ralph Stout* with him on the brief; *Peyser & Harris,* attorneys), for appellant.

*Archie B. Morrison* of counsel (*John D. Lynn* and *William T. Rogers* with him on the brief; *Daniel Miner,* attorney), for respondents.

SHIENTAG, J. Plaintiff brought this action to recover damages for personal injuries suffered when a storage battery in his Dodge automobile exploded. The battery was manufactured by defendant Auto-Lite Battery Corporation and was sold to plaintiff through defendant Chrysler.

The accident occurred on a cold dry morning (November 19, 1942) when plaintiff attempted to check the distilled water level in the battery. As he leaned over to inspect the water, it is claimed, he put his finger on the car and apparently made a spark of static electricity which ignited an accumulation of hydrogen gas at the top of the battery.

The battery supplied with this automobile was not the type that was in general use in the automobile storage battery industry. Plaintiff claims that the construction of the battery was such that under certain conditions accumulations of hydrogen gas were not readily dissipated into the air. Not only was it charged that there was negligence in the construction of the battery but that the defendants should be held liable in damages for having sold without warning a potentially dangerous instrumentality. The verdict of the jury was in favor of the defendants and it is not contended to have been against the weight of the credible evidence. We are, however, obliged to reverse and to order a new trial for what we believe to be substantial error in rulings made in connection with the cross-examination of an expert called on behalf of defendants.

The inventor and designer of this battery, a man named Wilson, testified on behalf of defendants, in part at any rate, as an expert. On cross-examination he said that he had familiarized himself with the literature on the subject; that it was part of his business as an engineer to " read up " on standard practice from recognized textbooks, manuals and periodicals. He further testified that he had studied the dangers arising from electro-static sparks and that in none of the literature he had read had his attention been called to the fact that explosions in connection with automobile storage batteries had been attributed to static sparks.

Counsel for plaintiff then attempted to lay the foundation for cross-examining the witness as to statements and opinions,

in treatises written by recognized authorities, at variance with the opinions expressed by the witness as an expert. The court refused to allow any such questions, erroneously assuming that counsel desired to offer the treatises or extracts therefrom in evidence. One such textbook, for example, was specifically referred to on the cross-examination but counsel was not permitted to ask the witness whether he had read the book or recognized its authoritativeness. The rulings of the court having closed the door on this entire line of questioning on cross-examination, it cannot be said what use the cross-examiner could legitimately have made, of the specific textbook referred to and of similar literature, in connection with the expert testimony given by the witness Wilson, or for that matter on the cross-examination of any of the other experts called by the defendants. Those rulings were erroneous and, in view of the sharply contested issues and of the importance of the role played by expert testimony on the trial, they were highly prejudicial.

Although there is a conflict of authorities in other jurisdictions, the rule in this State, and it reflects the weight of authority generally, is that on cross-examination an expert may, for discrediting purposes, be confronted with a passage from a treatise of recognized authority which is at variance or in conflict with the opinion expressed by the witness on the stand. Wigmore indicates his disapproval of the practice but many authorities cited by him sustain its validity (6 Wigmore on Evidence [3d ed.], § 1700). In this State, as in many other jurisdictions, the practice has been upheld by well-reasoned judicial decisions.

The opinions expressed in treatises of recognized authority which are at variance with those given on the stand by the expert may not be received in evidence (*McEvoy* v. *Lommel,* 78 App. Div. 324, 327); the reference to them has no bearing on their truth or validity; they are used only as tending to impeach the witness on the stand with respect to his knowledge of the subject on which he professes to be an expert. If the expert witness does not concede the authoritativeness of the literature attempted to be resorted to, it may not be used on cross-examination.

Cross-examination for discrediting purposes along the lines mentioned is not, as respondents contend, limited to textbooks or literature to which the witness (without objection) has referred on his direct examination. Of course, any misstatement of a witness may be developed on cross-examination. Nor is the practice confined to those cases only where the witness

testifies that he has read the book concerning which he is being questioned. Where an expert testifies that he has read the treatise, the scope of the examination may be broader; but that does not affect the general application of the rule that treatises, which the witness concedes are authoritative in character, may be used to impeach the testimony given by him. The rule here discussed applies only to treatises and to litera-ture of recognized authority; it does not apply where it is sought to cross-examine an expert about an opinion expressed by an absent expert, of recognized authority, on the specific controversy involved in the litigation.

In the leading case of *Egan* v. *Dry Dock, E. B. & B. R. R. Co.* (12 App. Div. 556, 571 [1st Dept.]), the court said: " it has been the custom, in this State at least, to call the attention of an expert witness, *upon cross-examination,* to books upon the sub-ject, and ask whether or not authors whom he admitted to be good authority had not expressed opinions different from that which was given by him upon the stand. The reference to books in such cases is not made for the purpose of making the statements in the books evidence before a jury, but solely for the purpose of ascertaining the weight to be given to the testimony of the witness. The extent to which such examina-tions may go is very largely in the discretion of the court. It has been usual to permit questions of that kind to be asked in this State, and we are not aware of any well-founded objec-tion to it." (Italics in the opinion.)

It is, however, urged by respondent that the authority of this decision has been impaired, if not completely repudiated, by the recent case of *People* v. *Riccardi* (285 N. Y. 21). We do not so construe the holding in that case. There, a mining engi-neer, called as a witness for the defendant, testified to his opinion that certain mining properties possessed great potential value. The People then produced a private written report with respect to these properties which had been made by another engineer of recognized standing whose views, as to their value, were completely at variance with those expressed by the witness on the stand. The People, over objection, confronted the wit-ness with this report of the absent engineer and questioned him about it. The Court of Appeals held that this constituted substantial error. The court pointed out that no reference had been made by the witness, on his examination in chief, to the report of the absent engineer and that in effect " the People were allowed to use the factual deductions of the absent Mr. Elsing as self-probative direct contradictions of Mr. Smith's

evidence for the defendant. So wide a breach of the rule against hearsay cannot be dismissed as an unsubstantial error * * *." This holding in no way impairs the authority of *Egan* v. *Dry Dock, E. B. & B. R. R. Co.* (12 App. Div. 556, *supra*). The Court of Appeals ruling has no application to the use of treatises of recognized authority, on the cross-examination of an expert, a proper foundation having been laid therefor.

The long-established practice in this State, as enunciated in the *Egan* case, is fully sustainable on principle and logic. In a carefully reasoned decision, cited by Wigmore, that of *Brownell* v. *Black* (31 New Brunswick 594, 595-596) the court said: " Medical works are produced which are recognized by the profession as standard authorities. An expert witness is being examined, who gives evidence as to specified diseases and their remedies. It is found by reference that his statements are at variance with what is laid down by the best authors on the same subject. Surely, it must be the right of counsel to confront the witness with books written by scientific men, leaders in their profession, for the purpose of shewing either that the witness is mistaken, or that he may explain and reconcile, if he can, the real or apparent difference between what he has said and what is found in the books. If it was otherwise, men of insufficient learning, or veritable quacks, might palm off their crude opinions on juries as scientific knowledge. There is a marked difference between reading what is in a book as evidence to a jury, and testing a witness when examining him by reading to him from the same book. In the one case, you are reading as evidence what, after all, is only the opinion of a scholar, however learned he may be, without an opportunity to cross-examine him. In the latter, you are testing the opinion of one expert by the writings of another, admitted to be of high authority. It may be that the author's views are placed before the jury as effectually in one way as in the other; but, in my opinion, one way is objectionable, and the other is not."

The testimony of all experts, except perhaps a few celebrated scientists, is based not only on their own experience but on their learning. Certain books and literature are regarded by each profession as authoritative and as truly setting forth the views and experience of authors of recognized standing with respect to accepted scientific theory and practice at the time of publication. When a witness has admitted acquaintance with the literature of his subject and is confronted with one of the books which he accepts as authoritative, the issue presented is not whether the statements in the book are true but whether the

witness has really read and intelligently applied what is stated in the book. Since the opinions of the witness Wilson were not only based on his own research but admittedly on the general literature of the subject, it was proper on cross-examination, within reasonable limitations, to use such literature, which he would recognize to be authoritative, for the purpose of testing the validity of the opinions expressed by him.

It has been urged that the effect of this type of cross-examination is to present to the jury indirectly what could not be presented directly as proof of facts. The law of evidence is replete with situations in which evidence is admitted for a limited and specific purpose. We must assume as the result of centuries of practice that a judge and jury can receive evidence for limited purposes without applying it improperly (*Laird* v. *Boston & Maine R. R.*, 80 N. H. 377, 378).

We hold, therefore, that the rule laid down in *Egan* v. *Dry Dock, E. B. & B. R. R. Co.* (12 App. Div. 556, *supra*) is still law in this State and that *People* v. *Riccardi* (285 N. Y. 21, *supra*) is no holding to the contrary. The learned court below improperly curtailed the scope of the cross-examination of the witness Wilson and in consequence that of the other experts called by defendants. This error was substantial and requires a new trial.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

PECK, P. J., GLENNON, DORE and VAN VOORHIS, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event. Settle order on notice.