### RECK v. PACIFIC–ATLANTIC S. S. CO.

**No. 139, Docket 21525.**

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1950.

Decided March 10, 1950.

Jay Leo Rothschild, of New York City (Corydon B. Dunham, of New York City, on the brief), for defendant-appellant.

Samuel Segal, of New York City, for plaintiff-appellee.

Before AUGUSTUS N. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff has obtained a judgment below on his claims based upon personal injuries received by him as an ordinary seaman on the defendant's Liberty ship, George Eastman. The judgment was based on a jury verdict of $46,000 for damages under the Jones Act, 46 U.S.C.A. § 688, and of $1,836 for maintenance and cure. Defendant's appeal raises questions as to the sufficiency of the evidence to support the judgment, the charge of the court, and the examination of certain of the witnesses.

Plaintiff shipped on the vessel in January, 1948, and accompanied it on a voyage transporting a cargo of coal from Norfolk, Virginia, to Venice, Italy, where it arrived on February 6. It lay offshore at Venice until February 17, when it departed for Malta. En route, on February 19, 1948, about noon, the plaintiff went to the chief mate and reported that people around him were plotting to kill him. The mate thought this the result of delirium tremens, caused by severe alcoholic intoxication while at Venice. So the mate gave him phenobarbitol to quiet his nerves and told him to go to bed. Shortly after 6 p. m. a crew member informed the mate that he was causing commotion and acting in an insane manner. The mate went below and found him highly agitated, claiming that the police were after him and that people on the ship were plotting against him. While the mate was present, he accused the chief steward of being one of the plotters and started to attack the chief steward with a fire ax until the mate and others restrained him, quieted him down, and locked him in his room.

About 8 p. m. plaintiff was in an even more nervous and unbalanced state; he had kicked a panel out of his locked door, and was shouting through the open panel and porthole at imaginary assassins, who he thought were going to harm him. The mate gave him another dose of phenobarbitol. At 9:20 p. m. the mate assigned the ship's carpenter, Tackett, to guard him, to stay in his room with him and see that he did not harm himself. He was then shouting, talking, and kicking in the belief that somebody was trying to kill him. The mate wanted to put him in irons, but the union delegate objected on the ground that they might hurt him. Tackett suggested putting him in a vacant room, apparently used as a hospital, which could be locked; but the mate decided that since he was harming no one he should stay where he was.

Shortly before 4 a.m. the next day plaintiff appeared to be sleeping, and Tackett took advantage of the opportunity to go out, leaving the door open, and to go to the lavatory fifteen feet away. He was gone about five minutes; and plaintiff was un-

guarded during this time, even though the watch was then changing and Tackett could have obtained relief for a moment. When Tackett returned he found that plaintiff had disappeared. Tackett searched the ship for about thirty minutes, and when he failed to find plaintiff, reported the disappearance to the mate. A general search was instituted, and about 6:30 a.m. plaintiff was found lying on tank tops at the bottom of the number one hold. The hatch at the top of the hold was open, and there were no lines or other safety precautions. Plaintiff, who was severely injured, was still delirious and was suffering from the delusion that he had been told to go into the hold or he would be cut from the breastbone, down as far as his imaginary attackers could reach.

On these facts there is no question but that a jury might properly find defendant to have been negligent; to allow a delirious seaman to go unguarded is a failure to exercise due care. As District Judge Way well puts it with regard to a seaman suffering from an epileptic fit or other seizure which had rendered him unconscious: "While there is merit in respondent's contention that the steward and the seamen present were not medical experts and did not know how to treat the illness with which Russell [the seaman] was afflicted, the court would hesitate to hold that any of them was so ignorant and inexperienced as not to be able to appreciate the necessity of restraining and guarding a man in his condition until he regained mental composure and the ability to care for himself. Allowing him to break away from them and go aft unassisted and unprotected under the circumstances was clearly negligent failure to care for and nurse an ill seaman and the sole proximate cause of his drowning." Russell v. Merchants & Miners Transp. Co., D. C. E. D. Va., 19 F.Supp. 349, 350. See also Robertson v. Charles B. Towns Hospital, 178 App.Div. 285, 165 N.Y.S. 17.

Defendant claims that even if it is found negligent, it should have had a directed verdict in its favor, on the ground that there was no evidence from which a jury could permissibly find that its negligence was the proximate cause of plaintiff's injury. Urging that it is sheer speculation for the jury to try and determine what happened in the two and one-half hours between the time that Tackett left plaintiff sleeping quietly in his room and when he was found lying at the bottom of the hold, defendant says that plaintiff may have been just prowling about the ship, or he may have gotten into a fight with someone else, or may in some other way not known have fallen into the hold for some reason for which defendant is not responsible.

We need not go far into the mysticism of proximate cause, see Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 123 A.L.R. 933, to conclude that this objection to the verdict is without merit. In Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, recovery was sought under the similar provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of a railroad switchman who was found lying at a short distance from his switch with a gash in his head. On the view of the facts most favorable to plaintiff there, it could be inferred that he was hit by a mailhook extending from a train backing past, though it could as reasonably have been inferred that he was hit over the head with a pipe or a club by an individual. There was no direct evidence as to which of these possibilities had occurred; the circumstantial evidence was, if anything, more favorable to the theory that the switchman was murdered. But the Supreme Court upheld a verdict in favor of the plaintiff against the railroad company, saying: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916. See also Casey v. American Export Lines, 2 Cir., 173 F.2d 324, 328; Myers v. Pittsburgh Coal Co., 233 U.S. 184, 34 S.Ct. 559, 58 L.Ed. 906.

■ In Batkiewicz v. Seas Shipping Co., D. C. S. D. N. Y., 66 F.Supp. 205, a passenger, in a "mentally deficient condition,"

disappeared and was never found. The court held that it was negligent to have left a passenger in such condition unguarded, and found the ship liable without discussion of proximate cause. Here there was ample evidence from which the jury might reasonably infer that plaintiff, suffering from delirium tremens, took advantage of being momentarily unguarded to seek to escape from his imaginary persecutors, wander around in the dark, and fall through an open hatch. Hence the verdict was justified.

Defendant complains of the charge and of the denial of several of its requests to charge, but these objections are unsubstantial. The charge was quite lengthy, and more than sufficiently presented to the jury the issues which it had to resolve. In so far as defendant's requests to charge were proper, they were included in substance in the charge as delivered.

Defendant further asserts error as to a cross-examination of the chief mate and of a doctor testifying for it as an expert upon the basis of a book not received in evidence. The book, "The Ship Medicine Chest on First Aid at Sea," is issued by the U. S. Public Health Service. The mate admitted that he was familiar with the book and with the sections of it telling how to treat delirium tremens. There was certainly no error in allowing it to be shown that the mate knew the correct way to treat a patient such as plaintiff.

As to the doctor, also, we think cross-examination on the basis of the "Medicine Chest" was permissible. The trial court indicated that it recognized the book as an authority; and cross-examination using other authorities in the field to impeach an expert witness has been held within the discretion of the trial judge. Mutual Ben. Health & Accident Ass'n v. Francis, 8 Cir., 148 F.2d 590, 597, 598. Rule 43(a), Federal Rules of Civil Procedure, 28 U.S.C.A., directs us to apply the rule of evidence, state or federal, most favorable to admissibility of the challenged evidence. Although subjected to criticism as inadequate, e.g., Thompson, Federal Rule 43(a) —A Decadent Decade, 34 Corn. L. Q. 238,

Green, The Admissibility of Evidence under the Federal Rules, 55 Harv.L.Rev. 197, it has served well, in the absence of a definitive code, to set the federal trend toward generous admissibility. Pfotzer v. Aqua Systems, 2 Cir., 162 F.2d 779, 785; Vanadium Corp. of America v. Fidelity & Deposit Co. of Md., 2 Cir., 159 F.2d 105, 109; Commercial Banking Corp. v. Martel, 2 Cir., 123 F.2d 846; and see Wright v. Wilson, 3 Cir., 154 F.2d 616, 170 A.L.R. 1237, certiorari denied 329 U.S. 743, 67 S.Ct. 50, 91 L.Ed. 640. We should give it rational effect in so normal an instance as this.

As a matter of fact, the courts of New York, where this case was tried, have steadily supported the use of such texts in the cross-examination of medical experts. In so doing they have referred, somewhat in passing, to a natural limitation which defendant would expand to the present instance—that a book thus called to the witness' attention shall be "recognized by him as an authority upon the subject as to which he has given an opinion," as the Court of Appeals puts it in People v. Feldman, 299 N.Y. 153, 168, 85 N.E.2d 913, 920, or negatively as stated in Hastings v. Chrysler Corp., 273 App.Div. 292, 77 N.Y.S.2d 524, 527: "If the expert witness does not concede the authoritativeness of the literature attempted to be resorted to, it may not be used on cross-examination." But this reads more into a generalized negative than we think was clearly or naturally in the judicial mind. Where the expert denies the authoritativeness of the text, then that must be determined before substantial use can be made of the book; since such collateral trials are not favored, the examination is properly halted. But where the expert denies all knowledge of what appears to be a standard governmental manual for the specific purpose, the issue is substantially different. We are not convinced from these New York authorities, in the light of the otherwise favorable trend to this form of examination noted above, that the state courts would automatically reverse such a test of the doctor's views as was here permitted. At any rate, if the benevolent federal rule is to have any effect, particularly in a case involving federal, and not state-

870

created, rights, we think it should be applied here. The examination on this issue was, as might be expected, substantially inconclusive; the verdict is, of course, otherwise adequately supported. Lavender v. Kurn, supra, 327 U.S. 645, 654, 66 S.Ct. 740, 90 L.Ed. 916.

Defendant's final point is even narrower. Plaintiff's counsel, in putting a long hypothetical question to his chief medical witness, asked what "was the cause" of plaintiff's delirium. Defendant objected on several grounds both "to the form" and to the substance of the question, and some discussion was had as to the incorporated facts before the question was admitted. On this appeal the defendant now particularizes his objection to the form of the question to state that it called for what was in fact, rather than what might have been, the cause. This is peculiarly the type of objection which under rule 46, Federal Rules of Civil Procedure, should have been made clear at the time, since it could and undoubtedly would have led to an immediate correction of whatever error of form may have been disclosed. Defendant cannot entrap a successful plaintiff by thus reserving its fire, particularly on a matter as inconsequential as this. We think defendant received a fair trial, and there is no reason to disturb the judgment on the verdict against it.

Judgment affirmed.