SCHWARTZ, Chief Judge.
Gaston Letelier, a helmsman on the cruise-ship Carnivale, committed suicide by jumping overboard. His widow brought a wrongful death action under the Jones Act and the general maritime law against the shipowner, Carnival Cruise Lines, based on the claim that it failed to exercise reasonable care to prevent the suicide. This appeal is from a summary judgment entered for the shipowner on the stated ground that the suicide was not foreseeable as a matter of law. We affirm.
The plaintiffs claim is based on an alleged breach of the duty a shipowner owes a seaman to take reasonable precautions to protect him from a danger — including one stemming from his own physical or mental condition — of which the owner was, or should have been, aware. See Colburn v. Bunge Towing, Inc., 883 F.2d 372 (5th Cir.1989); Dempsey v. Mac Towing, Inc., 876 F.2d 1538 (11th Cir.1989); Bednar v. United States Lines, Inc., 360 F.Supp. 1313 (N.D.Ohio 1973). The record does not support the existence of the defendant’s liability under this rule. Viewing it in the required light most favorable to the plaintiff, it shows — and shows only — that Ga-ston Letelier, formerly a happy person, with no history of mental difficulty, had, as the appellant’s brief puts it, become “visibly and obviously depressed and abnormal” presumably because of the death of a close relative and his inability to be with his family on shore. But there is no evidence, or reasonable inference that Letelier had said or done anything which indicated the likelihood or even the possibility that he would harm himself in any way.[1]
The total absence of that evidence is fatal to the claim that the vessel was under a duty to take some precautions to prevent him from doing so. The cases demonstrate that the shipowner’s obligation to protect a crewman from himself arises — as common sense would indicate — not just from an observation that a crewmember is depressed or otherwise mentally ill. There must be evidence “of a serious medical problem, so as to put defendant’s personnel on notice that [the seaman] required protective precautions to ensure his safety,” see Estate of Larkins v. Farrell Lines, Inc., 806 F.2d 510, 514 (4th Cir.1986) (quoting from instruction), cert. denied, 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), or, to put it more pointedly, that he had taken “actions which indicate that [he] may do harm to others or to himself.” Hartsfield v. Seafarers Int’l Union, 427 F.Supp. 264, 269 (S.D.Ala.1977). There is, to repeat, no such showing here. And we have discovered or been cited to no case in which liability has been sustained in the absence of such evidence. The cases cited by the plaintiff which do find liability are so plainly distinguishable on this very ground as to make the point themselves. In Bednar, 360 F.Supp. at 1313; The Carson, *1273 104 F.2d 762 (9th Cir.1939), cert. denied, 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 494 (1939); Whitaker v. Blidberg-Rothchild Co., 195 F.Supp. 420 (E.D.Va.1961), aff'd, 296 F.2d 554 (4th Cir.1961); and Batkieweicz v. Seas Shipping Co., 66 F.Supp. 205 (S.D.N.Y.1945), the shipowners were held liable for suicide which resulted from the vessel’s failure to keep its respective crewmen under close and continuous watch. But in Bednar, the seaman, with a long prior history of severe psychiatric difficulties, had acted delusional during a conversation with the master; he was later found nude, “vague” and writing a confusing note about his own suicide. In The Carson, the seaman was found leaning over the stern talking to an imaginary person, was later held in physical restraint by fellow crewmembers who were concerned for his safety, and experienced fits of frenzy including foaming at the mouth and talking nonsen-sibly. In Batkieweicz, the master was alerted that a seaman-passenger had made three attempts to jump overboard, was continually muttering to himself and was hallucinating. Finally, in Whitaker, a seaman who had complained of severe nervousness and thought people were talking about him, told the master to handcuff him to the bunk because he might do something desperate.
Indeed, it seems to be universally held, in a variety of contexts, that there is no liability for a suicide by an entity responsible for the welfare Of another in the absence of evidence of “suicidal tendencies” of which the defendant was or should have been aware and against which it should have guarded. See Annot., Civil Liability for Death by Suicide, 11 A.L.R.2d 751, 782 (1950). This is the rule even in the extreme situation which occurs when a patient of a mental hospital— who by definition is suffering from psychiatric difficulties of some kind — has given no previous indication that his mental illness might lead to suicide. See Annot., Liability of Mental Care Facility for Suicide of Patient or Former Patient, 19 A.L.R.4th 7, 26-29, 39-41, 49-51 (1983). Since “the ship’s captain is not a physician,” Bednar, 360 F.Supp. at 1315, the principle applies to this situation on an a fortiori basis. See Holmes v. Mississippi Shipping Co., 301 F.2d 474 (5th Cir.1962), cert. dismissed, 371 U.S. 802, 83 S.Ct. 13, 19 L.Ed.2d 46 (1962). We cannot hold a ship’s officers to the duty of foreseeing what is unforeseeable even to medical professionals with the result that a person who is simply, if severely, depressed must be guarded against taking his own life. While the evidence required for liability “under the Jones Act ... does indeed approach the vanishing point ... it has not yet reached it.” Brown v. Stanwick Int’l, Inc., 367 So.2d 241, 245 (Fla. 3d DCA 1979).
There is no harmful error demonstrated in the procedural point raised by the appellant.
Affirmed.

. We may disregard, as plainly inadmissible speculation and hearsay, a crewmember's deposition testimony that (a) he was told that "[t]he captain, I suppose!)] I don’t know exactly” had told Letelier "to take a rest” and (b) that he had “heard ... but [didn't] remember exactly” that a second crewmember had told still a third one— neither of whom testified — to watch Letelier because he was acting "in a strange manner.” See Motors Ins. Corp. v. Woodcock, 394 So.2d 485, 488 n. 4 (Fla. 3d DCA 1981); Page v. Staley, 226 So.2d 129, 130 (Fla. 4th DCA 1969). Even taking this wildly uncertain evidence at face value, however, does not assist the plaintiff because neither incident reflects any indication of the vital element of suicidal intent.