DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHERI SURLOFF,**
as personal representative of the Estate of Dr. Arthur B. Surloff,
deceased, on behalf of herself and all potential beneficiaries and heirs,
Appellant,

v.

**REGIONS BANK,**
an Alabama corporation, and **MARK K. ANDERSON**, an individual,
Appellees.

No. 4D14-842

[November 18, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County, Jack Tuter, Judge; L.T. Case No. 12-010356 CACE (19).

Joel D. Eaton of Podhurst Orseck, P.A., Miami, for appellant.

Joshua D. Lerner and Jessica G. Lagos of Rumberger, Kirk & Caldwell, P.A., Miami, for appellees.

LEVINE, J.

The issue presented for our review is whether a bank has any duty or "special relationship" with its client that would result in the bank being liable for its client's suicide. We hold that a bank has no duty to its client because no "special relationship" exists whereby a bank has the right or ability to prevent its client's suicide. We, therefore, affirm the trial court's dismissal of appellant's complaint.

Appellant, Cheri Surloff, personal representative of the Estate of Dr. Arthur B. Surloff, the decedent, filed an amended complaint for wrongful death against appellees, Regions Bank and its Senior Vice President, Mark Anderson. All of the following facts are as alleged in the complaint and are accepted as true for the purposes of this appeal.

The complaint alleged the decedent suffered from mental and physical impairments resulting in the decedent being unable to process complex information. The decedent went to meet with representatives of Regions

regarding the mortgage the decedent held with Cheri Surloff. Because of the decedent's condition, several members of his family went with him. The decedent's family informed Regions's representatives of the decedent's anxiety related to financial matters and explained he had an inability to "deal with complex information, especially negative financial information." The decedent's family specifically requested that Regions not contact the decedent, except with regard to "ministerial or document requests." Regions's representative agreed to the family's terms, and over the course of the loan process, "repeatedly reaffirmed their commitment" not to contact the decedent about complex financial information.

Subsequently, the decedent received a letter by mistake, informing him that his loan was denied. As a result, the decedent became upset. The decedent's family again told Regions's representative not to communicate with the decedent and not to contact the decedent regarding the loan.

Representatives from Regions met with the decedent's doctor. The doctor reiterated to Regions that the decedent had a permanent disability and warned Regions's representatives of the decedent's "fragile condition" and the "likelihood that Dr. Surloff could cause mental and physical harm to himself." The decedent's doctor also had extensive notes regarding the decedent's proclivity for self-harm, and "on information and belief" the doctor referenced these notes in his discussions with Regions. The complaint also indicated Regions "may" have been provided these records although no evidence suggested the bank ever received them.

Regions's employee, Mark Anderson, continued to speak with the decedent, despite being told not to do so. Upon discovering that Anderson had spoken with the decedent, Regions's Vice President and Relationship Manager reminded Anderson not to contact the decedent. However, two days later, Anderson told the decedent his loan was denied. The decedent then left, went to a motel, ingested a large of amount of medication, and died in the hospital three days later.

Based on the foregoing, appellant brought claims against appellees for negligent undertaking and negligent infliction of emotional distress. Appellant alleged that because of appellees' "voluntary assumption" to handle the loan "without contacting [the decedent] as to financial or substantive issues," appellees "owed [decedent] a duty of reasonable care." Appellees "knew or should have known that communicating with [the decedent] directly and informing him that the loan was denied would severely emotionally traumatize and distress him." Appellees breached their duty by communicating to the decedent that his loan had been

denied. This caused the decedent "severe emotional distress" and ultimately resulted in the decedent's death.

Appellees moved to dismiss the complaint for failure to state a cause of action. The trial court granted the motion, dismissing both counts with prejudice. The trial court held appellees owed the decedent no duty, stating that the bank never had any knowledge the decedent would commit suicide and no nexus existed between Regions's duty and the decedent's suicide.

On appeal, appellant argues that the trial court erred in dismissing her complaint because the decedent's death was foreseeable, and Regions undertook a duty to safeguard the decedent when it gave repeated assurances that it would refrain from discussing complex financial matters with the decedent.

We review the trial court's grant of the motion to dismiss for failure to state a cause of action de novo. *Goodall v. Whispering Woods Ctr., L.L.C.*, 990 So. 2d 695, 697 (Fla. 4th DCA 2008). "In reviewing an order granting a motion to dismiss, this court's gaze is limited to the four corners of the complaint. The facts alleged in the complaint must be accepted as true and all reasonable inferences are drawn in favor of the pleader." *Id.* (citation and internal quotation marks omitted).

A cause of action based in negligence requires the defendant to have had a duty to the plaintiff. *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). "Whether a duty exists is a question of law for the court." *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 408 (Fla. 4th DCA 2005). The "polestar" for determining both the existence and scope of a legal duty is foreseeability. *Id.* "[W]henever a human endeavor creates a generalized and foreseeable risk of harming others . . . 'the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.'" *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992) (quoting *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989)). Indeed, "reasonable, general foresight is the core of the duty element." *Id.* In addition to foreseeability of harm, in order for a legal duty to exist "the defendant's conduct must 'create' the risk." *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).

Under Florida's "undertaker's doctrine," "[w]henever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the 'undertaker'—thereby assumes a duty to act carefully and to not put

others at an undue risk of harm." *Clay Elec. Co-op.*, 873 So. 2d at 1186. "Voluntarily undertaking to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby 'creates a foreseeable zone of risk.'" *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 67 (Fla. 1996) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)).

Generally no liability exists for another's suicide in the absence of a specific duty of care. *Kelley v. Beverly Hills Club Apartments*, 68 So. 3d 954, 957 (Fla. 3d DCA 2011); *Paddock v. Chacko*, 522 So. 2d 410, 416 (Fla. 5th DCA 1988). One can "assume" such a duty by taking custody and control over another. *Estate of Brennan v. Church of Scientology Flag Serv. Org.*, 832 F. Supp. 2d 1370, 1377-78 (M.D. Fla. 2011). For example, a duty to prevent suicide exists where a patient is committed to a psychological institution, *Kelley*, 68 So. 3d at 957, or where a child is under the supervision of a school, *see Wyke v. Polk Cnty Sch. Bd.*, 129 F.3d 560, 571 (11th Cir. 1997). Alternatively, some Florida courts have determined that professionals, such as psychiatrists, have a duty to treat patients in accordance with professional standards and may be liable if negligent care results in a patient's suicide. *See Granicz v. Charillo*, 147 So. 3d 544, 548-49 (Fla. 2d DCA), *review granted*, 168 So. 3d 224 (Fla. 2014). *But see Lawlor v. Orlando*, 795 So. 2d 147, 148 (Fla. 1st DCA 2001) (holding a psychotherapist had no duty for the suicide of a patient in a non-custodial setting).

A legal duty requires more than just foreseeability alone. *Aguila*, 878 So. 2d at 396. A duty requires one to be in a position to "control the risk." *Id.* Thus, in cases of psychiatric facilities, they are liable for a patient's self-harm because they are "in a position to exercise measures to prevent the suicidal patients from inflicting injuries on themselves." *See Paddock*, 522 So. 2d at 416. But where a patient commits suicide outside of a facility's "range of observation and control," a duty is not present. *See Tuten*, 84 So. 3d at 1068. *See also Peklun v. Tierra Del Mar Condo. Ass'n*, 25 Fla. L. Weekly Fed. D 226 (S.D. Fla. Aug. 4, 2015) (holding a condominium association had no duty to a woman who had committed suicide after the association removed the woman's dog because, while the association knew the dog was essential to the woman's "will to live," the association had no authority to prevent the woman's suicide).

In the instant case, Regions did not assume a specific duty of care to prevent the decedent from committing suicide. Although Regions allegedly knew of the decedent's mental state and agreed to withhold complex financial information from the decedent, Regions could not undertake a

4

duty to prevent the decedent's suicide because the decedent was not in Regions's "custody or control." *See Kelly*, 68 So. 3d at 958. *See also Paddock*, 522 So. 2d at 416 ("The duty [to prevent another's suicide] is based *solely* on the fact of the patient's confinement to the hospital, and the hospital's ability to supervise, monitor and restrain the patient.") (emphasis added); *Tuten v. Fariborzian*, 84 So. 3d 1063, 1068 (Fla. 1st DCA 2012) (holding that a psychiatrist had no duty to detain a patient who killed himself and injured his wife because the patient was "outside of the scope of the facility's range of observation and control" even when the psychiatrist agreed to treat the patient, the patient had suicidal tendencies, and the psychologist took the patient into custody but then later permitted him to leave). Regions simply had no ability or responsibility to protect the decedent from committing suicide.

Appellant relies on *Rafferman v. Carnival Cruise Lines, Inc.*, 659 So. 2d 1271 (Fla. 3d DCA 1995), for the position that one can be held liable for another's suicide so long as the suicide is foreseeable. In *Rafferman*, the helmsman on a cruise ship committed suicide and his widow brought a wrongful death action against the cruise line. The plaintiff based her claim on "the duty a shipowner owes a seaman to take reasonable precautions to protect him from a danger" pursuant to the Jones Act, 46 U.S.C. § 30104 and general maritime law. *Id.* at 1272. The court held the cruise line should not be liable because the defendant was not aware of the seaman's suicidal intentions.

*Rafferman* applied federal maritime law, which "assigns a heavy responsibility for the safety of seamen to the owner of the ship" because "seamen are subject to rigorous discipline while at sea and must accept, without criticism, working conditions on orders from superior officers." *Dempsey v. Mac Towing, Inc.*, 876 F.2d 1538, 1542 (11th Cir. 1989). A consequence of this responsibility under federal maritime law is that a shipowner has a duty to prevent the foreseeable, self-inflicted injury of the ship's crew. *See Rafferman*, 659 So. 2d at 1273.

Obviously, banks and their clients do not share the same, close relationship as shipowners and their seamen. A bank neither supervises its clients' day-to-day activities, nor exerts any type of supervisory control over them. Because a bank does not have this responsibility, it also does not have the corollary responsibility to protect its clients against self-inflicted injury. *See also Aguila*, 878 So. 2d at 399 ("[T]he fact that a defendant realizes or should realize that an action on his or her part is required to ensure the safety of another person does not alone create a duty to take that action. The defendant must also have a right to take the action in question.") (citation omitted). Because Regions had no duty or

5

"heavy responsibility" to the decedent by virtue of their relationship, unlike in *Rafferman,* the inquiry in this case does not even reach the question of whether the decedent's suicide was foreseeable. *See Rafferman,* 659 So. 2d at 1272-73.

Appellant also argues that the theory of negligent infliction of emotional distress requires recognition of a duty. We dispense with this argument, finding it without merit.

In summary, we hold that the bank had no duty to appellant since no special relationship existed between the bank and its client, and we further hold the bank did not and could not undertake to protect appellant from any self-inflicted injury. Thus, we affirm.

*Affirmed.*

STEVENSON and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***