# Third District Court of Appeal

## State of Florida

Opinion filed April 2, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0258
Lower Tribunal No. 18-30749
_____

**Robert C. Burley, etc.,**
Appellant,

vs.

**The Village South, Inc., etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Carlos Guzman, Judge.

Leesfield Scolaro, P.A., and Thomas Scolaro and Carlos A. Fabano; Leesfield & Partners, P.A., and Justin Shapiro; Samson Appellate Law, and Daniel M. Samson, for appellant.

Lydecker, LLP, and Forrest L. Andrews, for appellee.

Before EMAS, SCALES and MILLER, JJ.

EMAS, J.

## INTRODUCTION

Anthony Burley (the Decedent) was involuntarily committed to The Village South, Inc. (Village South), an addiction treatment facility. After less than a month, he was discharged for violating the facility's rules, and forty-eight days after discharge, he died from a drug overdose.

His father, Robert Burley, individually and as the personal representative of the Estate of Anthony Burley (together, Appellants), filed suit against Village South for wrongful death, alleging that the facility owed a legal duty to the Decedent—grounded in statute, regulation and Village South's own policies and procedures—with respect to *the manner* of the Decedent's discharge, and that the facility breached its duty when it failed to refer the Decedent to an appropriate inpatient treatment center and to arrange for post-discharge management of his medication to treat his opioid addiction. The Estate contends that Village South's breach of this duty proximately caused the Decedent's death.

Village South moved for summary judgment, which the court granted upon a finding that Village South owed no duty of care to the Decedent because he was "no longer under the custody and control of Village South at the time of his death." The Estate appeals the trial court's final summary

2

judgment in favor of Village South and, for the reasons that follow, we reverse.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The Decedent was thirty years old at the time of his death. He had a history of drug addiction, and had survived two prior drug overdoses. In August of 2016, after suffering his third overdose, a Marchman Act[1] proceeding was instituted, and the Decedent was involuntarily committed. The Decedent completed detoxification and was then transferred to the care of Village South on October 17, 2016.

The Decedent tested negative for controlled substances at the time of his admission, but tested positive for cocaine on October 26, having obtained the drugs from his roommate at Village South. Because the use of controlled substances on the premises violated the facility's rules, Village South discharged the Decedent to Chapman Hall, a homeless shelter. Despite the rule violation, the Decedent remained at Village South for thirteen more days—testing negative for controlled substances on November 6—before he

---

[1] The Marchman Act, also known as the Hal S. Marchman Alcohol and Other Drug Services Act of 1993, see section 397.301 et. seq., Florida Statutes (2016), provides a statutory procedure for an individual in need of substance abuse services (assessment and/or treatment) to receive emergency services and temporary placement for evaluation while treatment modalities are explored on either a voluntary or involuntary basis.

was formally discharged on November 8.  At that time, Village South provided him with a two-week supply of Suboxone (a medication used to reduce symptoms of opioid addiction and withdrawal) and a list of doctors to contact for medication maintenance. The Decedent was at Village South for a total of twenty-three days—from October 17 to November 8, 2016.

On December 26, 2016 (forty-eight days after his discharge from Village South), the Decedent overdosed and died of acute combined drug toxicity.

The Estate filed a three-count complaint against Village South, alleging wrongful death (Count I), violation of section 415.111, Florida Statutes (protecting vulnerable adults), and breach of fiduciary duties. In the pertinent wrongful death claim, the Estate alleged Village South owed the Decedent a statutory duty under section 397.6751(3), Florida Statutes, and breached that duty by, primarily, failing to properly discharge the Decedent, e.g., provide him with continued substance abuse treatment (in-patient or out-patient) and monitor (post-discharge) his Suboxone prescription.[2]  See §

---

[2] Count I of the complaint includes an extensive list of ways Village South purportedly breached the aforementioned duty. The various actions and/or inaction by Village South generally fall into two categories—the failure to monitor the Decedent so as to prevent him from taking drugs at Village South, and the failure to discharge the Decedent in a manner that would permit him to continue his substance abuse treatment. However, the Initial Brief focuses on the allegations surrounding the manner of discharge.

4

397.6751(3), Fla. Stat. (2016) ("When, in the judgment of the service provider, the medical conditions or behavioral problems of an involuntary individual become such that they cannot be safely managed by the service component, *the service provider must discharge the individual and <u>attempt to assist him or her in securing more appropriate services in a setting more responsive to his or her needs</u>*.") (emphasis added).

Village South moved for summary judgment, arguing primarily that it had no "legal duty to prevent the death of Anthony Burley" once he was discharged from the facility, and that the Estate failed to establish a causal link between Village South's actions or inaction and the Decedent's death forty-eight days after discharge. To support its position, Village South submitted substantial summary judgment evidence, including deposition testimony from a Village South therapist (Roxana Tefel) and a Department of Children and Families (DCF) employee (Yamile Diaz Conte). Both witnesses confirmed that, if an individual tests positive for drugs while at a rehabilitation facility, he must be discharged. They also confirmed Village South notified the Monroe County Marchman Court of the Decedent's discharge from the facility but was informed Monroe County no longer had jurisdiction over him since at that point he was located in Miami-Dade County.

5

The Estate responded that Village South owed a duty to the Decedent to provide an "adequate discharge and proper management of opioid addiction medication, in accordance with the prevailing standard of care." On this point, the Estate cited Village South's own policies and procedures, as well as numerous statutes and regulations.[3] The Estate relied on many of the same depositions as Village South and an affidavit from its expert (Amy Harrington).

The Estate's expert opined that Village South "negligently provided substance abuse care and treatment to [the Decedent] and utterly failed to provide him with an adequate discharge from its facility"; specifically, risk of opioid overdose is higher following an "abrupt termination from opioid replacement therapy through at least 32 weeks," and the Decedent died approximately four weeks after his Suboxone prescription would have run out; and Village South failed to provide the Decedent "a continuity of substance abuse treatment, ongoing management of his medication needs, access to physicians and the benefit of a substance abuse treatment support system to prevent relapse."

---

[3] The Estate cited several statutory provisions and regulations as the source of Village South's duty owed to the Decedent: sections 397.6751(1)(f), 397.419(1), 397.501(3)(a), and Florida Administrative Code 65D-30.004 and 65D-30.014.

As for DCF employee Conte, she testified that Village South was subject to a corrective action plan "as a response to what happened to [the Decedent]"—e.g., Village South "had clinical recommendations in the notes [] for this client to continue receiving treatment for substance abuse," yet the facility "discharged the client to a homeless shelter," and Village South further failed to "abide by [its] own policy" when it discharged the Decedent without "facilitating . . . an appointment with the doctor who could prescribe Suboxone after discharge."[4]

The trial court held a hearing on the motion, during which the existence or nonexistence of a duty was forcefully argued by both sides. The trial court ultimately granted Village South's motion, finding Village South owed no duty to the Decedent once he left the custody and control of Village South, nor did it have a duty to prevent the Decedent's death. In finding no duty, the trial court examined whether Village South's actions created a foreseeable zone of risk. It did not address the Estate's position that Village South's duty to the Decedent arose from its own policies and procedures, and Florida Statute and regulations.[5] This appeal followed.

---

[4] Conte further explained: "Corrective action plan is something that we— issue to a provider in order for them to correct something that was found to be not in line with established rules."

[5] The trial court also granted summary judgment on counts II (violation of section 415.1111) and III (breach of fiduciary duty) on the basis that the

**ANALYSIS**

As it argued below, the Estate contends on appeal that it is not challenging the "**act** of discharge" but rather "the **manner** of discharge," alleging that, on this issue, Village South failed to follow statutory and regulatory requirements and its own policies and procedures in the manner in which it discharged the Decedent, thus breaching a duty which proximately caused the death of the Decedent from a drug overdose. The trial court, the Estate continues, failed to even consider whether the relevant statutes, regulations and Village South's own policies and procedures created a duty regarding the manner of the Decedent's discharge from Village South.

Upon our de novo review, we hold that Village South owed a legal duty to the Decedent, and that there remain disputed issues of material fact, precluding summary judgment. See Chirillo v. Granicz, 199 So. 3d 246, 248-49 (Fla. 2016) ("The determination of duty, as an element of negligence, is a question of law, McCain v. Florida Power Corp., 593 So. 2d 500, 502 (Fla.1992), and is therefore subject to de novo review, Est. of Rotell ex rel. Rotell v. Kuehnle, 38 So. 3d 783, 785 (Fla. 2d DCA 2010)."); see also Brownlee v. 22nd Ave. Apts., LLC, 389 So. 3d 695, 698 (Fla. 3d DCA 2024)

---

relationship between the Decedent and Village South ended upon his discharge. On appeal, the Estate focuses on its wrongful death claim.

8

("The standard of review on orders granting final summary judgment is de novo.") (quotation omitted); Est. of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC, 983 So. 2d 1175, 1180 (Fla. 2nd DCA 2008) ("While breach, causation, and damages are typically questions for the finder of fact, the determination of duty is a matter of law.").

"To establish a cause of action for negligence in a wrongful death action, a plaintiff must allege and prove (1) *the existence of a legal duty owed to the decedent*, (2) breach of that duty, (3) legal or proximate cause of death was that breach, and (4) consequential damages." Jenkins v. W.L. Roberts, Inc., 851 So. 2d 781, 783 (Fla. 1st DCA 2003) (emphasis added). The existence of a duty is a threshold question. Id.; see also Surloff v. Regions Bank, 179 So. 3d 472, 475 (Fla. 4th DCA 2015) ("A cause of action based in negligence requires the defendant to have had a duty to the plaintiff.") (quoting Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)). Such a duty "may arise from four general sources," e.g., "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case." White v. Ring Power Corp., 261 So. 3d 689, 697 (Fla. 3d DCA 2018) (quoting Clay Elec. Co-op., 873 So. 2d at 1185) and citing Limones v. Sch. Dist. of Lee

9

Cnty., 161 So. 3d 384, 389 (Fla. 2015) ("Florida law recognizes the following four sources of duty: (1) statutes or regulations; (2) common law interpretations of those statutes or regulations; (3) other sources in the common law; and (4) the general facts of the case"); see also McCain, 593 So. 2d at 503 n.2 (noting: "The Restatement (Second) of Torts, for example, recognizes four sources of duty: (1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. Restatement (Second) of Torts § 285 (1965).").

The first category (legislative enactments or administrative regulations) and fourth category (duty arising from the general facts of the case) are applicable here.

**A Duty Arising From Legislative Enactments or Administrative Regulations**

Regarding this first category by which a duty may be found to exist, the law is well-established: "[A] statute creates a duty of care upon one whose behavior is the subject of the statute to a person who is in the class designed to be protected by the statute, and [] such duty will support a finding of liability for negligence when the injury suffered by a person in the protected class is that which the statute was designed to prevent." Palmer v. Shearson Lehman Hutton, Inc., 622 So. 2d 1085, 1090 (Fla. 1st DCA 1993) (citing

10

deJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198 (Fla.1973)); see also Abril v. Dep't of Corr., 884 So. 2d 206, 209 (Fla. 2d DCA 2004) ("When a statute creates a clear duty of care, the violation of that duty can 'generate[] a viable cause of action in tort.'") (quoting Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002)).

The Estate, in its complaint, alleges Village South owed the Decedent a statutory duty under section 397.6751(3), Florida Statutes. Entitled "Service provider responsibilities regarding **involuntary admissions**," the statute requires that, where an individual's behavior requires discharge, "the service provider . . . attempt to assist him or her in securing **more appropriate services in a setting more responsive to his or her needs**." (emphasis added). Likewise, subsection (f) of the same statute requires a service provider to "[t]ake all necessary measures to ensure that each individual in treatment is provided with a safe environment, and to ensure that each individual whose medical condition or behavioral problem becomes such that he or she cannot be safely managed by the service component is discharged **and referred to a more appropriate setting for care**." (emphasis added); see also § 397.305(1), Fla. Stat. (2016) (expressing legislative intent and findings: "Substance abuse impairment is a disease which affects the whole family and the whole of society and requires a

11

system of care that includes, prevention, intervention, clinical treatment, and recovery support services that support and strengthen the family unit.") Read in pari materia, these provisions impose a legal duty upon Village South with respect to the alleged negligent conduct related to the Decedent's placement upon discharge. Compare with Palmer, 622 So. 2d 1085, 1089 (Fla. 1st DCA 1993) (finding statutes and administrative rules read in pari materia imposed legal duties supporting a cause of action and genuine issue of fact existed as to whether breach of that duty caused plaintiff's injuries).

Village South, as a "service provider" for substance abuse services, is "one whose behavior is the subject of the statute," and the Decedent as a person involuntarily admitted to a service provider for substance abuse treatment "is in the class designed to be protected" by section 397.6751(3). Palmer, 622 So. 2d at 1090. Further, the Estate presented testimony and other evidence suggesting Village South failed, upon the Decedent's discharge, to "attempt to assist him . . . in securing more appropriate services in a setting more responsive to his . . . needs."[6] Such evidence included

---

[6] Village South contends that, when it contacted the Monroe County Marchman Court, this was sufficient to satisfy the statute's requirement that it "attempt to assist" the Decedent "in securing more appropriate services." However, given the conflicting evidence presented at summary judgment, whether Village South breached this duty to the Decedent remains a disputed issue of fact to be determined by the finder of fact. Est. of Johnson ex rel. Johnson v. Badger Acquisition of Tampa LLC, 983 So. 2d 1175, 1180

testimony from Conte (a DCF employee) explaining Village South received a corrective action plan because it "needed to correct the fact [it] did not provide transfer to another substance abuse facility for this client." Specifically, the facility discharged the Decedent to a homeless shelter with no "link or transfer" to either an out-patient or residential substance abuse provider despite clinical recommendations from Village South's *own* clinical team for continued treatment.

**A Duty Arising From the General Facts of the Case**

Village South also owed the Decedent a legal duty under the fourth category, recognizing "a duty arising from the general facts of the case." White, 261 So. 3d at 697. "Under this category, 'the trial and appellate courts cannot find a lack of duty if a foreseeable zone of risk more likely than not was created by the defendant.'" Id. (quoting McCain, 593 So. 2d at 503).[7] Again, the Estate presented evidence to this effect: Conte's testimony

_____

(Fla. 2nd DCA 2008) ("While breach, causation, and damages are typically questions for the finder of fact, the determination of duty is a matter of law.").

[7] We need not and therefore do not reach the question of whether Village South's policies and procedures alone create a legal duty. Johnson v. Wal-Mart Stores E., LP, 389 So. 3d 705, 709 (Fla. 1st DCA 2024) ("[E]ven if internal policies might sometimes be relevant (and therefore admissible) when a jury decides compliance with the proper standard of care in a negligence case, we fail to see how a single party's internal policies are themselves evidence that an alleged tortfeasor's conduct creates a reasonably foreseeable zone of risk.").

13

indicating Village South failed to abide by its own policy to "provide a linkage or appointment" with a "specific doctor" for management of the Decedent's Suboxone prescription; and the affidavit of the Estate's expert opining that, when initiating opiate-withdrawal medication, "the standard of care is to either taper the medication before discharge or to ensure that a patient has enough medication until he can attend a scheduled appointment with an out-patient provider." The Estate, in other words, presented evidence that Village South created a "foreseeable zone of risk" when it provided the Decedent with Suboxone with no follow-up medical appointment, particularly where he was referred to a homeless shelter rather than a rehabilitation center.

It is true—as Village South contends—that in Florida there is "no common law duty to protect a patient once he has left [a facility's] custody and control." Haslett v. Broward Health Imperial Point Med. Ctr., 197 So. 3d 124, 127 (Fla. 4th DCA 2016). However, the Estate does not challenge Village South's actions after the Decedent left the facility; instead, the Estate challenges Village South's actions in the manner in which it chose to discharge him—to a homeless shelter, as opposed to a rehabilitation or treatment center—with an insufficient amount of Suboxone and no follow-up medical appointment. The Estate's claim challenges Village South's

14

provision of care, even if it was the final act of care in the service provider/client relationship. And, again, discharge is part of the provision of care to an involuntarily admitted client as identified in section 397.6751(1)(f).[8]

Chirillo v. Granicz, 199 So. 3d 246, 251 (Fla. 2016) is instructive. In Chirillo, the decedent sought treatment from Dr. Chirillo for depression, and Dr. Chirillo prescribed her an antidepressant, Effexor. Three years into her treatment, the decedent called Dr. Chirillo's office and informed the medical assistant that she had stopped taking Effexor due to certain side effects. Dr. Chirillo (through his assistant) changed the decedent's prescription to Lexapro, and advised the decedent to pick up samples at the office. He did not schedule an appointment to assess her condition in person. The day after the decedent began her new prescription, she committed suicide.

---

[8] Even if Monroe County no longer considered the Decedent as subject to the Marchman Act (given his placement in Miami-Dade), he was indisputably involuntarily committed to Village South under the Marchman Act and thereafter discharged from Village South due to a "behavioral problem" such that he could not be "safely managed" by Village South. See § 397.6751(1)(f), Fla. Stat. (requiring the service provider to "[t]ake all necessary measures to ensure that each individual in treatment is provided with a safe environment, and to ensure that each individual whose medical condition or behavioral problem becomes such that he or she cannot be safely managed by the service component is discharged and referred to a more appropriate setting for care.").

15

The decedent's estate subsequently sued Dr. Chirillo for wrongful death asserting he "breached his duty of care in treating the decedent and that her suicide resulted from that breach." Dr. Chirillo moved for summary judgment arguing he owed no duty to prevent the decedent's suicide, and the trial court granted the motion finding, as a matter of law, Dr. Chirillo did not owe a duty to prevent "the unforeseeable suicide of an outpatient." Granicz v. Chirillo, 147 So. 3d 544, 547 (Fla. 2d DCA 2014), approved, 199 So. 3d 246 (Fla. 2016). The Second District reversed, explaining the duty asserted was not to prevent the decedent's suicide but "to exercise reasonable care in [] treatment of the decedent," and summary judgment was improper where the estate presented "expert testimony setting forth the applicable standard of care, how it was breached, and how the breach was the proximate cause of the decedent's suicide." This duty, it continued, is based in part on section 766.102(1), Florida Statutes, providing "the prevailing standard of care" for a physician in Florida. § 766.102(1), Fla. Stat. ("The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers."). And the estate presented expert testimony that, upon a patient complaining of symptoms

16

suggesting worsening depression, the standard of care requires "physicians to personally assess the patient's condition to determine if she is having thoughts of suicide and to intervene if necessary." Granicz, 147 So. 3d at 548. The Second District then concluded such evidence was "sufficient to establish that Dr. Chirillo owed a legal duty to [the decedent] that precluded summary judgment." Id.

The Florida Supreme Court agreed with the Second District, opining on the distinction between the non-existent duty to prevent a suicide in an outpatient scenario and the separate, statutory duty to provide a patient with appropriate care:

> Petitioners are correct that Florida law has not extended the duty to prevent suicide to an outpatient scenario, but such fact only highlights why Petitioners' attempt to classify the duty in the instant case as a duty to prevent suicide is incorrect and inappropriate. The decedent in this case was an outpatient of Dr. Chirillo's. Therefore, under Florida law, there was no duty to prevent her suicide. Paddock v. Chacko, 522 So. 2d 410, 415–17 (Fla. 5th DCA 1988). However, **the nonexistence of one specific type of duty does not mean that Dr. Chirillo owed the decedent no duty at all**.[] As we plainly stated in McCain, there are several sources of duty. **Although the inpatient duty to prevent suicide does not apply here, there still existed a statutory duty under section 766.102 to treat the decedent in accordance with the standard of care**. We find that the Second District properly evaluated the instant case based on the statutory duty owed to the decedent and also properly classified the foreseeability of the decedent's suicide as a matter of fact for the jury to decide in determining proximate cause

Chirillo, 199 So. 3d at 251-52 (emphasis added).

17

Likewise, the absence of a duty to treat the Decedent following discharge did not negate Village South's duty under section 397.6751(3) and (1)(f) to "assist him in securing more appropriate services in a setting more responsive to his . . . needs," and the Estate presented evidence that Village South, at a minimum, should have referred the Decedent to Village South's outpatient program. The Estate also presented sufficient evidence to support a determination that Village South owed a duty to the Decedent—under the general facts of the case—to properly manage the Decedent's Suboxone prescription.

Whether Village South breached these duties, and whether such breach proximately caused the Decedent's death, are issues for the finder of fact, and we express no opinion on those issues.

## CONCLUSION

We hold that Village South owed a legal duty to the Decedent, arising from legislative enactments or administrative regulations, as well as arising from the general facts of the case. We further hold that there remain disputed issues of material fact, precluding summary judgment. We therefore reverse the final summary judgment and remand this cause for further proceedings.