908 So.2d 499 (2005)
T.W. and K.W., Appellants,
v.
REGAL TRACE, LTD., Milton Jones Development Corp., Milton Jones Management Corp., Wm. Meredith Tr., Inc., and Mary Christiansen, Appellees.
No. 4D04-1725.
District Court of Appeal of Florida, Fourth District.
June 15, 2005.
Rehearing Denied August 23, 2005.
*501 Adam Lawrence of Lawrence & Daniels, Miami, and Malove & Kaufman, P.A., Fort Lauderdale, for appellants.
Warren B. Kwavnick and David F. Cooney of Cooney, Mattson, Lance, Blackburn, Richards & O'Connor, P.A., Fort Lauderdale, for appellees.
PER CURIAM.
T.W. and K.W. appeal from the entry of a final summary judgment in favor of Regal Trace, Ltd., Milton Jones Development Corporation, and Milton Jones Management Corporation (collectively "Regal Trace"). T.W. and K.W. contend that summary judgment was inappropriate because Regal Trace, the apartment complex at which daughter and mother were tenants, and its ownership and management, had a duty to warn about and a duty to investigate a child molester operating at the complex and believed to be a tenant. We agree that Regal Trace had a duty to warn T.W. and K.W., but not that Regal Trace had a duty to investigate the perpetrator. As such, we reverse the summary judgment.
T.W. and K.W. filed suit against Regal Trace, and other entities and individuals that are not pertinent to this appeal, for negligence, including failure to protect tenants from reasonably foreseeable criminal activity and failure to warn tenants about criminal activity on the premises, based on the following factual allegations. K.W. and her three children, including T.W., were tenants of Regal Trace, an apartment complex in Fort Lauderdale. On March 4, 2000, Hassan Davis, who resided in Apartment 1605, sexually assaulted a nine-year-old girl, K.G., after luring her with toys into a complex meter room. Regal Trace knew or should have known about the incident, but failed to advise tenants that it had occurred. On March 20, 2000, T.W. left Regal Trace for school through an opening in the complex's perimeter fence. Davis followed her as she walked to school. Davis eventually approached T.W., took her to an abandoned building, and sexually assaulted her.
Regal Trace filed a motion for summary judgment, asserting that the material facts were not in dispute: T.W. and two brothers were walking to school unsupervised; Davis approached them three blocks from the complex; Davis instructed the boys that T.W. would join them later; and Davis took T.W. to an abandoned building and sexually assaulted her. Attached to the motion was a Regal Trace incident report regarding K.G. that stated Regal Trace had been informed that K.G. was "raped on the property by some guy that she has seen before, and someone she knows." Depositions were also attached, including that of Mary Jones, the property manager at Regal Trace at the time. She testified that during her time as manager, only one alleged crime came to her attention, and that was the incident involving K.G. Jones explained that a tenant called to inform her of the incident, that she told the tenant that K.G.'s mother should call, and that K.G.'s mother called and directed Jones to her attorney for information. Jones further testified that law enforcement contacted her a few days after the incident, but provided her with few details. Law enforcement emphasized that the incident was a matter for the police and instructed her not to inform tenants of the incident because hysteria might result and the details of the incident were unclear. Jones stated that after the incident with *502 T.W., a flyer with a description of the suspect was circulated to residents, and the flyer quickly led to the arrest and eviction of Davis.
T.W. and K.W. presented several depositions in opposition to the motion for summary judgment. In K.W.'s deposition, she testified that she did not learn of the incident with K.G. until after T.W. was assaulted. Furthermore, when asked what Regal Trace did wrong, she responded:
For one, they didn't aware [sic] the community of the situation. They put out notices for everything else, I mean everything; newsletters, crime watch meetings. ThisI mean, little things, they put out letters for.
So if there was an incident that happened prior to my daughter, why couldn't they have put out a letter stating that thisthere has been an incident in the complex, to be aware of your kids. You think I'm going to let my daughter walk to school if I know that someone has been attacked at that complex or in the neighborhood?
In his deposition, Milton Jones, the owner of Milton Jones Development and Milton Jones Management, testified that he could not say whether there was any criminal activity about which he would want his property manager to advise tenants. He indicated that the incident with K.G. was not reported to him or Mary Jones because K.G.'s mother referred Mary Jones to her attorney.
Three other depositions in opposition are also significant. In her deposition, T.W. stated that she and her brothers were slipping through the fence to walk to school when she saw Davis. She then saw Davis follow them through the fence and down the street. In her deposition, K.G.'s mother, I.G., testified that she told Regal Trace about the incident with K.G. and never instructed Regal Trace to speak with her attorney. In her deposition, K.G. indicated that she was playing outside at Regal Trace when a man approached her and lured her into a meter room with the promise of a toy he retrieved from an upstairs apartment in the 1600 building and then raped her.
T.W. and K.W. additionally filed an affidavit from a police management and security consultant, which stated:
Regal Trace was not relieved of its security obligations to its tenants by virtue of Detective Long's alleged instructions `not to get involved.' The undersigned doubts Detective Long really said this in the way Regal Trace allegedly interpreted it: as a directive to Regal Trace to do nothing to protect its residents from further assaults. It would be contrary to customary and reasonable police procedure for a police officer to discourage a residential apartment manager from taking reasonable steps to prevent further assaults on its juvenile residents while the police investigation was underway. Even if Regal Trace believed that this is what Detective Long meant, no reasonable residential property manager in Regal Trace's position would feel legally bound by such a statement to do nothing to protect its residents, on its own private property, from future criminal assaults.
The trial court granted Regal Trace's motion for summary judgment and entered an order of final summary judgment.
The standard of review applicable to orders on summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000); Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a *503 matter of law." Aberdeen, 760 So.2d at 130.
"The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader `zone of risk' that poses a general threat of harm to others." McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992). "`Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses.'" Id. at 503 (citations omitted). However, a person or entity "generally has no duty to take precautions to protect another against criminal acts of third parties." Gross v. Family Servs. Agency, 716 So.2d 337, 338 (Fla. 4th DCA 1998). But, there is an exception to this rule where a special relationship, such as that between landlord and tenant exists. Id. at 338-339. "The rule in Florida is well established that a landlord has a duty to protect a tenant from reasonably foreseeable criminal conduct." Salerno v. Hart Fin. Corp., 521 So.2d 234, 235 (Fla. 4th DCA 1988). "However, in order to impose that duty an injured tenant must prove that the landlord has knowledge of prior similar criminal conduct occurring on the premises." Id.; see also Menendez v. Palms W. Condo. Ass'n, 736 So.2d 58, 61 (Fla. 1st DCA 1999).
In the absence of a special relationship, another set of exceptions to the general rule that there is no duty to prevent the misconduct of third persons may apply. See Michael & Philip, Inc. v. Sierra, 776 So.2d 294, 297-298 (Fla. 4th DCA 2000)(indicating that the exception for premises liability and the landlord-tenant special relationship exception are two separate exceptions to the general rule, and thus, it follows, two separate bases on which to find a duty). "Currently, the duty to protect strangers against the tortious conduct of another can arise if, at the time of the injury, the defendant is in actual or constructive control of: 1. the instrumentality; 2. the premises on which the tort was committed; or 3. the tort-feasor." Daly v. Denny's, Inc., 694 So.2d 775, 777 (Fla. 4th DCA 1997).
T.W. and K.W. contend that based on the landlord-tenant special relationship, Regal Trace had a duty to protect them from the reasonably foreseeable criminal activity of sexual assault by a co-tenant. They base this contention on the fact that data, law, and experience indicate that perpetrators of sexual crimes are recidivistic and that the best defense against their assaults is adequate warning, especially in a complex with many children. To support this position, T.W. and K.W. rely on several cases, two of which are particularly illustrative. In Gross, a special relationship between university and adult student was established, and a duty to protect and warn against a foreseeable off-campus assault at the location of a university-arranged internship was found. 716 So.2d at 340; see K.M. v. Publix Super Mkts., Inc., 895 So.2d 1114, 1118 (Fla. 4th DCA 2005)(recognizing special relationship in Gross). In Shurben v. Dollar Rent-A-Car, 676 So.2d 467 (Fla. 3d DCA 1996), a special relationship between rental agency and customer was established and a duty to protect against foreseeable attacks on tourists driving rental cars identifiable by their license plates in crime-prone areas was found. Id. at 468; see K.M., 895 So.2d at 1118 (recognizing special relationship in Shurben).
Regal Trace contends that it had no duty to protect against a criminal attack occurring off of its premises, as it did not have control of or make use of the premises on which the attack occurred. It further *504 asserts that it had no duty based on several cases.
Two of these cases stand for the proposition that even where a special relationship exists, such as landlord-tenant, a duty arises only within the course of that relationship. See Adika v. Beekman Towers, Inc., 633 So.2d 1170, 1171 (Fla. 3d DCA 1994)(in an innkeeper-guest special relationship case: "[T]he Restatement notes that the duty only applies when the risk of harm arises in the course of the special relationship. More germane to the instant case, the Restatement expressly provides: `. . . nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises.'"); Concepcion v. Archdiocese of Miami, 693 So.2d 1103 (Fla. 3d DCA 1997)(recognizing same principle in school-minor child special relationship case, and distinguishing from landowner-invitee special relationship case). Additionally, K.M., supports this analysis. 895 So.2d at 1116 ("[W]e hold that an employer does not have a duty to warn one employee about a second employee's criminal background, where the warning pertains to the employees' personal relationship outside of work;" this statement recognizes that such a personal relationship is beyond the course of the employer-employee special relationship). However, it should be noted that there was no special relationship in K.M. between the employer and the injured child.
Another case cited by Regal Trace, National Property Investors, II, Ltd. v. Attardo, 639 So.2d 691 (Fla. 5th DCA 1994), considers the course of a special relationship, that between landowner and business invitee. The Fifth District wrote the following:
In other words, because Weir first became attracted to Ms. Attardo in the parking lot and followed her from 7-Eleven to ultimately commit the acts alleged in the complaint in the parking lot of Sugar Mill where there is said to be inadequate lighting and security, NPI urges that Southland must legally share in the responsibility. We disagree.
* * * * * *
But to suggest that Southland is liable because someone who happens to be on its property (even if he has not and did not intend to purchase anything) follows a patron down the street to an unlighted parking lot and there commits a crime is carrying landlord liability too far. Apparently the security of 7-Eleven, on its premises or on any premises being used or utilized by it, was sufficient to protect its patron so long as she remained there. No court has yet extended landlord liability beyond this point.
Id. at 692.
Based on the arguments and authorities presented, we first address whether a special relationship exists in the case at bar. If the answer to that question is affirmative, then it must be determined whether the incident at hand occurred within the course of that relationship so as to give rise to a duty. If the answer to that question is negative, then it must be determined whether another exception to the general rule of no liability for third-party criminal acts applies, namely control of the premises, and whether such exception gives rise to a duty.
We must determine whether a special relationship exists in this case giving rise to a duty to protect against foreseeable third-party criminal acts. It is without question that such a relationship potentially exists by virtue of the fact that Regal Trace and T.W. and K.W. are landlord and tenants. However, for the duty regarding third party criminal acts to arise, it must be proven that the landlord has knowledge of prior similar criminal conduct. In this *505 case, T.W. and K.W. asserted a duty to protect against sexual assault only, so that it seems logical that only knowledge of sexual assault, and not general criminality, should be considered. As such, the question is whether T.W. and K.W. have presented evidence that Regal Trace had actual or constructive knowledge of the prior sexual assault of K.G. It is without question that Regal Trace at least knew that such an assault allegedly occurred, because it admitted being told of the assault by a tenant, and law enforcement, even if not told of the precise details of the assault. Because of Regal Trace's knowledge that some sort of sexual assault had occurred against K.G. on its premises, likely by a tenant, and because it had a landlord-tenant relationship with T.W. and K.W., it had a duty to protect against the foreseeable criminal acts of third parties within the course of that special relationship, in this case by warning tenants about those foreseeable acts (as discussed below).
As such, the question becomes whether the incident at hand occurred within the course of the landlord-tenant relationship between Regal Trace and T.W. and K.W. where it culminated several blocks away from the complex premises in an abandoned building owned by other individuals and entities (as we note that Davis began to perpetrate the crime when he witnessed T.W. climbing through the fence from the complex parking lot and followed her). On this issue, the answer to the question is a matter of which cases present the most similar factual circumstances to the case at bar.
The major difference between the cases cited by Regal Trace and T.W. and K.W. centers on superior knowledge. In Gross and Shurben, the university and the rental car company were aware of the potential for criminality at the internship site and on the streets, while the students and tourists were not. This fact distinguishes Attardo, because the theory of negligence in that case related to inadequate lighting and security, and not to any claim of superior knowledge of foreseeable criminal activity. Adika is also distinguishable on this basis, because although the claim was partly about failure to warn of ocean conditions which the hotel would be more aware of than tourists, it was determined that the hotel had in fact verbally warned the tourists of the dangerous conditions. K.M. is more difficult to distinguish because it most certainly addresses a scenario in which the employer had superior knowledge that one employee who was babysitting for another had a criminal record of sexual battery on a minor, a fact that the employee-mother did not know. Despite this fact and the existence of a special relationship regarding the claims of the employee (although not the child), this Court found that the employer did not have a duty to protect or warn against the eventual sexual assault occurring off the premises. Given this, there remains a key distinction between K.M. on the one hand and Gross and Shurben on the other hand: a university is in the business of arranging internships for students and a rental agency is in the business of providing cars to tourists, but a grocery store is not in the business of arranging for babysitting services between employees. As such, the course of the relationship in K.M. does not give rise to a duty, although because of the activity involved rather than its location.
As such, we conclude that the incident at bar, both in location and activity, was within the course of the landlord-tenant relationship between Regal Trace and T.W. and K.W. so as to create a duty to protect, specifically a duty to warn as discussed below. We reach this conclusion because this case is more closely analogous to Gross and Shurben than K.M. because a landlord is in the business of renting housing *506 in a community to a tenant. Just as the courts in Gross and Shurben found that implicit within the special relationship is the requirement that one provide a safe internship or a safe vehicle, it can be said that a landlord is to provide safe housing, which necessarily includes the security of areas surrounding and essential to living in that housing (i.e., parking lots, sidewalks, playgrounds, etc.). Requiring landlords to provide safe housing is supported by Lambert v. Doe, 453 So.2d 844 (Fla. 1st DCA 1984), in which it was found that a landlord had a duty to warn prospective tenants about a tenant known to commit sexual assaults on the premises.
We now turn to the issue of what Regal Trace's duty to protect entails, and consider whether it includes a duty to warn or a duty to investigate. T.W. and K.W. contend that Regal Trace and Milton Jones had two duties in the case at bar. First, they had the duty to warn of the sexual assault on K.G. because it might have deterred further sexual assaults and caused T.W. to no longer walk to school without adult supervision. T.W. and K.W. base this contention on the duty to warn found in the analogous circumstances discussed above. Second, T.W. and K.W. assert that Regal Trace and Milton Jones had a duty to investigate the identity of the perpetrator of K.G.'s assault, because in retrospect the description given by K.G. matched that of Davis and identification could have resulted in protective action.
Regal Trace responds that it would stretch the law to hold it liable for an off-premises crime for failure to warn of a specific unverified on-premises crime. As such, it had no duty to warn because it did not create the risk. Additionally, it had no duty to warn because of law enforcement instructions not to, because residents learned of the incident through other channels, and because Regal Trace lacked sufficient information to provide a warning. Regal Trace asserts that Shurben precluded a duty to investigate in the circumstances at bar. This is especially the case because the identification of the perpetrator was apparently difficult given that the police did not make an identification until after the second assault.
We agree with Regal Trace that the duty in the analogous circumstances of Shurben did not include a duty to investigate the crimes posing a danger to tourists, and as a result, reject T.W. and K.W.'s contention that Regal Trace had a duty to investigate. 676 So.2d at 468 ("We do not mean to say that the rental agency is under any obligation to conduct independent investigation into crime problems."). However, based on Shurben, we conclude that Regal Trace had a duty to warn. 676 So.2d at 468 ("Assuming the facts as alleged by Shurben are true, we believe that Dollar had a duty to warn Shurben of foreseeable criminal conduct, particularly in light of the superior knowledge of the car rental company. . . . Rather, the claim here is based on information of which, according to the complaint, the rental company had actual knowledge. Based on the knowledge it had on hand, Dollar should have realized that criminals were targeting tourist car renters in certain areas of Miami and that a reasonable rental company in possession of those facts would understand that its customers would be exposed to unreasonable risk of harm if not warned."). A full account of the assault on K.G. was not required to issue a basic warning about alleged criminal sexual activity presumably perpetrated by one tenant on a tenant child; knowledge that a tenant was targeting tenant children on the Regal Trace premises was sufficient for a reasonable apartment complex to recognize that its tenants would be exposed to risk if not warned.
*507 As a result of our conclusions that Regal Trace had a duty to T.W. and K.W. and that the duty encompassed warning, we conclude that the trial court erred by granting a summary judgment in favor of Regal Trace. Because a duty existed as a matter of law, it is for a jury to decide whether Regal Trace breached that duty. See Selvin v. DMC Regency Residence, Ltd., 807 So.2d 676, 682 (Fla. 4th DCA 2001)("How the duty of due care should be met in a given case is for the jury . . . . `it is peculiarly a jury function to determine what precautions are reasonably required in the exercise of a particular duty of due care' . . . . `[w]hat is and what is not reasonable care under the circumstances is, as a general rule, simply undeterminable as a matter of law.'"). Therefore, we reverse and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
GUNTHER, POLEN and HAZOURI, JJ., concur.