DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CHAD SAUNDERS,**
Appellant,

v.

**THE BASEBALL FACTORY, INC.,** et al.,
Appellees.

No. 4D22-399

[May 17, 2023]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 502019CA008541MB.

Stephanie L. Serafin and Rebecca Mercier Vargas of Kreusler-Walsh, Vargas & Serafin, P.A., West Palm Beach, and Charles D. Thomas of Thompson & Thomas, P.A., West Palm Beach, for appellant.

Hinda Klein of Conroy Simberg, Hollywood, for appellee The Baseball Factory, Inc.

GROSS, J.

Chad Saunders, an umpire at a youth baseball tournament sponsored by The Baseball Factory, Inc. (the "Baseball Factory"), was seriously injured when a 17-year-old baseball player punched him in the face at the end of a baseball game. Saunders sued the Baseball Factory and other defendants. The trial court entered a final order dismissing the amended complaint as to the Baseball Factory. Saunders appeals the dismissal. We affirm because the Baseball Factory's mere operation of a baseball tournament did not give rise to a duty to protect the umpire from a battery committed by a player, absent some additional risk factor that would have placed the Baseball Factory on notice of the potential for violence.

### Facts and Procedural History

The amended complaint alleges the following facts. The Baseball Factory "is a company specializing in player development and college placement of high school athletes in numerous sports including baseball."

In July 2015, the Baseball Factory operated a baseball tournament at a stadium in Jupiter, Florida. Co-Defendant Miami Suns Youth Development ("Miami Suns") entered a team into the tournament. The Baseball Factory selected Saunders "to serve as an umpire" during the tournament. The amended complaint contains no allegation of an employment relationship between Saunders and the Baseball Factory.

During the tournament, Saunders was the home plate umpire for a game between the Miami Suns and another team. In the final inning of the game, the Miami Suns were trailing with two outs. A 17-year-old Miami Suns player then came up to bat for the team.

After the player had received two strikes, the opposing pitcher threw a pitch. Saunders called a third strike, and the player was called out. This ended the game and the Miami Suns lost.

Upset with the called strike, the player threw down his helmet and flung his bat against the backstop. He cursed at Saunders and argued that the final pitch was not a strike. Saunders approached the player and questioned his language, as post-game ejections were permitted under the tournament rules.

Saunders told the player that the call was correct. The player became "extremely upset" and approached Saunders "in an aggressive manner," touching his chest against Saunders's chest. The Miami Suns manager did not intervene.

Saunders tried to retreat and took a step to his right, but the player pushed Saunders. Before Saunders could take a second step, he felt a sudden punch to his face, which sent him to the ground.

About two minutes elapsed between the time when Saunders made the final strike call and when the player attacked Saunders on the field. During this two-minute period, no agent from the Baseball Factory came to Saunders's aid. The police responded to the scene and arrested the player for aggravated battery.

Saunders sued the Baseball Factory, the player's parents, and the Miami Suns for negligence. Count I of the amended complaint was against the Baseball Factory. Saunders alleged that the baseball game was played on a field "under the control, supervision and operation" of the Baseball Factory. On the question of duty, Saunders alleged that the Baseball Factory owed a duty to all the players and participants, including Saunders, "to conduct a reasonably safe tournament by taking reasonable

2

precautions to guard against and/or warn of the risk of reasonably foreseeable injuries occurring during and at the conclusion of baseball games."

Saunders further alleged that the Baseball Factory adopted game rules which prohibited players from having any physical contact with or engaging in any physical action directed toward an umpire, including charging an umpire. In addition, the rules provided that a coach who attempted to prevent a fight or restore order was not in violation of the rules.

Saunders alleged that the Baseball Factory breached its duties in numerous ways, such as "causing and/or allowing" the player to strike him and failing to properly supervise the activities. He claimed that as a direct and proximate result of the Baseball Factory's negligence, Saunders was seriously injured.

The Baseball Factory moved to dismiss the amended complaint. At the ensuing hearing, the trial court granted the motion to dismiss, ruling that the Baseball Factory had no duty "to have people in place to . . . stop typical recreational activity arguments that suddenly and without explanation escalate[] by one person committing a crime." The trial court later entered a written order dismissing the amended complaint with prejudice as to the Baseball Factory only, reasoning that "the incident alleged in the Amended Complaint did not breach the requisite standard of care, as the incident occurred during a typical recreational activity and not an unusually dangerous activity such to impose liability as claimed by Plaintiff."[1] This appeal ensued.

### *Analysis*

On appeal, Saunders argues that the trial court erred by granting the Baseball Factory's motion to dismiss, as the amended complaint stated a claim for negligence. Saunders contends that the Baseball Factory owed a duty of care to provide a reasonably safe baseball tournament for participants and umpires. The Baseball Factory's conduct created a foreseeable zone of risk, Saunders argues, because it was "objectively reasonable for the Baseball Factory to expect the danger of a physical altercation between a player and umpire" during a competitive baseball tournament, particularly where the Baseball Factory adopted rules that prohibited aggressive actions toward umpires.

---

[1] The player's parents were defaulted in the action, and Saunders's claim against the Miami Suns is still pending.

The standard of review of an order dismissing a complaint with prejudice is de novo. *Borrack v. Reed*, 53 So. 3d 1253, 1255 (Fla. 4th DCA 2011).

To state a claim for negligence, the plaintiff must allege: (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

Duty "is a minimal threshold legal requirement for opening the courthouse doors[.]" *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992) (footnote omitted). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989).

"[T]he zone of risk created by a defendant defines the scope of the defendant's legal duty and the scope of the zone of risk is in turn determined by the foreseeability of a risk of harm to others." *Smith v. Fla. Power & Light Co.*, 857 So. 2d 224, 229 (Fla. 2d DCA 2003). "While a written policy or manual may be instructive in determining whether the alleged tortfeasor acted negligently in fulfilling an independently established duty of care, it does not itself establish such a legal duty vis-a-vis individual members of the public." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 937 (Fla. 2004).

"To determine whether the risk of injury to a plaintiff is foreseeable under the concept of duty, courts must look at whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility." *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022). A legal duty does not exist merely because the harm in question was foreseeable—instead, the defendant's conduct must "create" the risk. *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004). In other words, a duty requires one to be in a position to "control the risk." *Surloff v. Regions Bank*, 179 So. 3d 472, 476 (Fla. 4th DCA 2015).

The general rule is that a person "has no duty to take precautions to protect another against criminal acts of third parties." *Gross v. Fam. Servs. Agency, Inc.*, 716 So. 2d 337, 338 (Fla. 4th DCA 1998). "Normally

the actor has much less reason to anticipate intentional misconduct than he has to anticipate negligence." *Restatement (Second) of Torts* § 302B cmt. d (Am. Law Inst. 1965). "This is true particularly where the intentional conduct is a crime, since under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law." *Id.* "Even where there is a recognizable possibility of the intentional interference, the possibility may be so slight, or there may be so slight a risk of foreseeable harm to another as a result of the interference, that a reasonable man in the position of the actor would disregard it." *Id.*

"It is not possible to state definite rules as to when the actor is required to take precautions against intentional or criminal misconduct." *Restatement (Second) of Torts* § 302B cmt. f (Am. Law Inst. 1965). As stated in the Second Restatement:

> Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take.

*Id.*

In an analogous case, albeit one involving unique policy concerns involving governmental entities, we held that a city owed no duty to supervise a typical recreational activity at a public park during low-use hours, without some additional risk factor. *See Jones v. City of Coral Springs*, 694 So. 2d 819, 820 (Fla. 4th DCA 1997). Accordingly, we affirmed a summary judgment in favor of the city where the plaintiff was punched in the face during a pickup basketball game, as we did not "see how the city could have, or should be expected to have prevented this injury." *Id.*

Traditionally, the "analysis of a defendant's liability in negligence for the criminal acts of another links the existence of a legal duty to the defendant's special relationship to the injured party or to the defendant's ability to control some aspect of the criminal act." *Knight v. Merhige*, 133 So. 3d 1140, 1144 (Fla. 4th DCA 2014). One of the limited exceptions to the general "no duty" rule is that a duty arises when the defendant has a "special relationship" with the plaintiff. *Id.* at 1145.

5

"[E]xamples of recognized special relationships include businesses toward their customers, employers toward their employees, jailers toward their prisoners, hospitals toward their patients, and schools toward their pupils." *Id.* (footnotes omitted). A special relationship typically arises in narrow circumstances where the relationship places the defendant in a superior position to control the risk, such as where the defendant has substantial control over the plaintiff so as to deprive the plaintiff of his or her normal opportunities for protection. *See Restatement (Second) of Torts* § 314A (Am. Law Inst. 1965) (an actor "who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection" has a special relationship giving rise to duty to aid or protect).

"In the absence of a special relationship, another set of exceptions to the general rule that there is no duty to prevent the misconduct of third persons may apply." *T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 503 (Fla. 4th DCA 2005). Such an exception can arise if the defendant is in actual or constructive control of: (1) the instrumentality; (2) the premises on which the tort was committed; or (3) the tortfeasor. *Id.*

Here, we conclude that the Baseball Factory's operation of the baseball tournament did not create a foreseeable zone of risk that a physical altercation would occur between a player and an umpire.[2] Saunders did not allege that the player had a known history of violence or that any prior incidents of violence had occurred at these tournaments.

Under the circumstances of this case, we fail to see how the Baseball Factory could have been expected to prevent this injury. As the umpire of the game, Saunders was in the best position to have anticipated the punch, but he was unable to do so. Saunders's counsel conceded below that he was not suggesting the Baseball Factory was required to hire off-duty police officers to be at the ready to break up any possible fight.

The question is whether it was *objectively* reasonable to expect the danger causing Saunders's injury, not whether it was within the realm of any conceivable possibility. Foreseeability must mean something more than awareness of the remote possibility that an athlete upset with a call would attack an official. While emotions run high at a competitive youth

---

[2] Although Saunders did not allege that he had a special relationship with the Baseball Factory, he did allege that the Baseball Factory was in control of the premises where the tort was committed. Thus, because Saunders alleged a possible exception to the general "no duty" rule, our analysis of the duty question focuses on foreseeability.

baseball tournament, a player sucker punching the home plate umpire is more of a unicorn event than a perfect game.

Requiring a tournament organizer to implement security measures for a youth sporting event, absent a reason for the organizer to anticipate violence, is an undue burden on the organizer when weighed against the utility of the activity. We emphasize that other adults would have been present on the field apart from the umpire—namely, the coaches of both teams—so it would have been reasonable for the Baseball Factory to expect that some other adult could have intervened to prevent the harm in the unlikely event of an altercation between a player and an umpire.[3] Thus, we conclude that the alleged facts did not give rise to a duty on the part of the Baseball Factory to have additional personnel on the field to protect Saunders from a player's attack that could not reasonably have been anticipated in advance of the game. This was not a situation where the organizer was on notice of the potential of violence from teams, players, or fans.

We disagree with Saunders's argument that the harm in this case was foreseeable because the Baseball Factory adopted rules prohibiting players from having any physical contact with umpires. Under *Pollock*, the Baseball Factory's tournament rules do not themselves create a duty. Incidents of athletes attacking officials in organized sports appear to be rare, as confirmed by the scarcity of reported case law on this topic.

We suspect that one of the reasons such violence rarely occurs is *because* there are rules in place to prohibit such conduct, punishing it with consequences such as ejections, suspensions, and, at the professional level, with fines. Just as it may reasonably be assumed under ordinary circumstances that no one will violate the criminal law, so too may it reasonably be assumed under ordinary circumstances that players will not violate game rules prohibiting violence against officials.

We conclude that an operator of a youth baseball tournament does not have a duty to provide supervision of the participants and the umpire, absent notice of a player's propensity for violence or of some additional risk factor that would give the operator an objectively reasonable basis for having measures in place in anticipation of possible violence at the game.

Because the amended complaint did not allege facts demonstrating that the Baseball Factory created a foreseeable zone of risk that a player would attack the umpire, we affirm the dismissal.

---

[3] We express no view as to whether the Miami Suns owed a duty to Saunders.

*Affirmed.*

MAY and FORST, JJ., concur.

\* \* \*

**_Not final until disposition of timely filed motion for rehearing._**