DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DANIEL VARONE** and **MELISSA VARONE,**
as Co-Personal Representatives of the **ESTATE OF S.V.,** deceased, and
**DANIEL VARONE** and **DAVID VARONE,** as Co-Personal Representatives
of the **ESTATE OF LITHA G. VARONE,**
Appellants,

v.

**PUBLIX SUPER MARKETS, INC.,**
Appellee.

No. 4D2024-1428

[March 18, 2026]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; G. Joseph Curley Jr., Judge; L.T. Case No. 50-2022-CA-010290-XXXX-MB.

Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, and Sean C. Domnick and Gregory M. Yaffa of Rafferty Domnick Cunningham & Yaffa, Palm Beach Gardens, for appellants.

Jason B. Gonzalez, Alan Lawson, Jessica Slatten, Mathew D. Gutierrez, and Robert Minchin III of Lawson Huck Gonzalez, Tallahassee, for appellee.

Tiffany Roddenberry of Holland & Knight LLP, Tallahassee, and William W. Large of Florida Justice Reform Institute, Tallahassee, for Amicus Curiae Florida Justice Reform Institute in support of appellee.

CIKLIN, J.

We are called to confront a case arising from a brutal act of random violence. Two people were tragically shot and killed inside the Publix at the Crossroads on June 10, 2021, and the co-personal representatives of their estates (the "plaintiffs") filed suit against Publix Super Markets, Inc. ("Publix"). The plaintiffs appeal a final summary judgment for Publix, holding the store owed no legal duty to protect against the criminal acts. We affirm, and we write to address the applicable case law.

In the proceedings below, Publix admitted that it managed, controlled, possessed, and operated the subject store, and it conceded that it had a duty to protect business invitees from "reasonably foreseeable" criminal attacks on third parties. Publix moved for summary judgment, however, arguing that, as a matter of law, the gunman's acts were unforeseeable, and that it did not have a duty to protect against those acts because no prior, similar criminal acts had occurred in the two years before the incident. Publix presented evidence reflecting that reported incidents within the store from 2016 until the incident were minimal and did not involve battery against a person.

The plaintiffs opposed the motion, arguing that Publix owed a legal duty to protect against the criminal acts because those acts were foreseeable. In support, the plaintiffs relied on evidence showing a national increase in active shooting events beginning in the 2010s, including statistics of 448 gun "incidents" and 137 gun deaths in national grocery store chains from January 1, 2020 to May 14, 2022, including 5 deaths at Publix stores. The plaintiffs also pointed to the fact that the FBI and Homeland Security issued videos on active shooter response, and, in 2016, Publix had implemented mandatory annual active shooter training for most associates of all Publix locations.

The trial court granted summary judgment, relying on *Relyea v. State*, 385 So. 2d 1378 (Fla. 4th DCA 1980), and limiting its ruling to a determination that Publix did not owe a legal duty to protect against the criminal attack at issue. The trial court rejected the plaintiffs' argument that *Relyea* is no longer good law, and distinguished the case law on which the plaintiffs relied, primarily *Holiday Inns, Inc. v. Shelburne*, 576 So. 2d 322 (Fla. 4th DCA 1991), *disapproved of on other grounds by Angrand v. Key*, 657 So. 2d 1146 (Fla. 1995). We affirm.

In the discussion that follows, we address negligence and duty generally, and we further clarify the viability and proper application of the above-cited cases and/or the principles discussed therein to questions of foreseeability in the context of duty versus foreseeability and in the context of breach and causation – two similar and overlapping but nevertheless different analyses. In the case at hand, only the element of duty is at issue.

The standard of review for an order granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Likewise, "[t]he determination of duty, as an element of negligence, is a question of law . . . and is therefore subject to de novo review[.]" *Chirillo v. Granicz*, 199 So. 3d 246, 248 (Fla. 2016).

2

## I.  Negligence & Duty Generally

"To state a claim for negligence, the plaintiff must allege:  (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages."  *Saunders v. Baseball Factory, Inc.*, 361 So. 3d 365, 369 (Fla. 4th DCA 2023).  The Florida Supreme Court's opinion in *McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992), is "the starting point for any duty analysis under Florida's negligence law."  *Chirillo*, 199 So. 3d at 249 (quoting *United States v. Stevens*, 994 So. 2d 1062, 1066 n.2 (Fla. 2008)).

"The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others."  *McCain*, 593 So. 2d at 502.

> "To determine whether the risk of injury to a plaintiff is foreseeable under the concept of duty, courts must look at whether it was objectively reasonable to expect the specific danger causing the plaintiff's injury, not simply whether it was within the realm of any conceivable possibility."  *Grieco v. Daiho Sangyo, Inc.*, 344 So. 3d 11, 23 (Fla. 4th DCA 2022).  A legal duty does not exist merely because the harm in question was foreseeable—instead, the defendant's conduct must "create" the risk.  *Aguila v. Hilton, Inc.*, 878 So. 2d 392, 396 (Fla. 1st DCA 2004).  In other words, a duty requires one to be in a position to "control the risk."  *Surloff v. Regions Bank*, 179 So. 3d 472, 476 (Fla. 4th DCA 2015).

*Saunders*, 361 So. 3d at 369.

Foreseeability may be relevant to both the element of duty (a legal question) and the element of proximate causation (a question of fact).  *McCain*, 593 So. 2d at 502.  "[F]oreseeability relates to duty and proximate causation in different ways and to different ends."  *Id.*  In *McCain*, the Florida Supreme Court cautioned against the "temptation . . . to merge the two elements into a single hybrid 'foreseeability' analysis, or to otherwise blur the distinctions between them.  A review of both precedent and public policy convinces us that such blurring would be incorrect, even though it often will yield the correct result."  *Id.*

> The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" . . . .  The proximate causation element, on the other hand, is concerned with whether and to what extent the

defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold *legal* requirement for opening the courthouse doors, whereas the latter is part of the much more specific *factual* requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.

It might seem theoretically more appealing to confine all questions of foreseeability within either the element of duty or the element of proximate causation. However, precedent, public policy, and common sense dictate that this is not possible. Foreseeability clearly is crucial in defining the scope of the general duty placed on every person to avoid negligent acts or omissions. Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. . . .

   . . . .

   Unlike in the "duty" context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. . . .

   We believe the district court below erred in that it confused the duty and proximate causation elements, resulting in a mistaken assumption that Florida Power's duty was to foresee the specific sequence of events that led to McCain's injury, in light of the precautionary measures the company already had taken. This approach in effect allowed the duty element to subsume the question of proximate causation, with the result that the district court improperly attempted to resolve on appeal a factual question that should have been left with the jury. *As to duty,* the proper inquiry for the reviewing appellate court is whether the defendant's conduct created a foreseeable zone of risk, *not* whether the defendant could foresee the specific injury that actually occurred.

*Id.* at 502-04 (citation and footnotes omitted).

4

"[A] person or other entity generally has no duty to take precautions to protect another against criminal acts of third parties . . . ." *Gross v. Fam. Servs. Agency, Inc.*, 716 So. 2d 337, 338 (Fla. 4th DCA 1998), *approved sub nom. Nova Se. Univ., Inc. v. Gross*, 758 So. 2d 86 (Fla. 2000). This is because "under ordinary circumstances it may reasonably be assumed that no one will violate the criminal law." *Saunders*, 361 So. 3d at 369 (quoting *Restatement (Second) of Torts* § 302B cmt. d (Am. Law Inst. 1965)).

"One of the limited exceptions to the general 'no duty' rule is that a duty arises when the defendant has a 'special relationship' with the plaintiff," such as businesses toward their customers. *Id.* at 370 (quoting *Knight v. Merhige*, 133 So. 3d 1140, 1145 (Fla. 4th DCA 2014)). Likewise, an exception may arise when the defendant is in actual or constructive control of the premises. *Id.* A premises owner/operator owes to a business invitee a duty to guard against subjecting the invitee to dangers that the owner/operator may have reasonably foreseen, including a criminal assault by a third party. *Fernandez v. Miami Jai-Alai, Inc.*, 386 So. 2d 4, 5 (Fla. 3d DCA 1980).

"The question is whether it was *objectively* reasonable to <u>expect</u> the danger causing [the plaintiff's] injury, not whether it was within the realm of any conceivable possibility. Foreseeability must mean something more than awareness of the remote possibility . . . ." *Saunders*, 361 So. 3d at 371 (underlined emphasis added). "It is incumbent upon the courts to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in the legal sense." *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 105 (Fla. 4th DCA 2017) (quoting *Fla. Power & Light Co. v. Macias*, 507 So. 2d 1113, 1115 (Fla. 3d DCA 1987)).

The principles discussed above are all well-established. The dispute presented by the parties herein, however, involves the applicability of *Relyea*, 385 So. 2d 1378, and, more specifically, whether it remains good law in light of *Shelburne*, 576 So. 2d 322. As discussed in the sections that follow, *Relyea* remains good law. In this case, applying *Relyea* compels the result that Publix had no legal duty to protect against the type of criminal conduct which occurred here.

## II.  *Relyea v. State*, 385 So. 2d 1378 (Fla. 4th DCA 1980)

*Relyea* involved consolidated wrongful death actions following the killing of two students who were abducted while walking to their car from a class in an outlying area of the FAU campus. *Relyea*, 385 So. 2d at 1379-80. After a hung jury resulted in a mistrial, the trial court granted

renewed motions for judgment on the pleadings and for directed verdict in favor of the defendants. *Id.* at 1380.

On appeal, the plaintiffs argued that FAU had a mandatory duty to provide reasonable security for all persons on campus, particularly students. *Id.* In affirming, we explained that the other defendants were sovereignly immune, and the trial court properly entered judgment in favor of the insurance company "because no cause of action was alleged or proved":

> In order to impose a duty upon a landowner to protect an invitee from criminal acts of a third person a plaintiff, invitee, **must allege and prove that the landowner had actual or constructive knowledge of prior, similar criminal acts committed upon invitees**. The landowner is not bound to anticipate criminal activities of third persons where, as here, the wrongdoers were complete strangers to the landowner and to the victims, and where the incident occurred precipitously. Appellants simply failed to allege or prove that any prior assaults upon persons had been committed in the area of the abduction and murder, or for that matter, anywhere on the campus. In fact, the proof showed there had not been one serious crime against a person since the school was founded in 1963. The reported incidents involved minor larcenies from automobiles and school buildings, hit and run complaints for minor automobile damage, and miscellaneous incidents such as malicious mischief. These facts do not give rise to the foreseeability of violent assaults which, in turn, may give rise to a duty to protect.

*Id.* at 1382-83 (emphasis added) (citations omitted); *see also Salerno v. Hart Fin. Corp.*, 521 So. 2d 234, 235 (Fla. 4th DCA 1988) (to establish a duty to protect against reasonably foreseeable criminal conduct, "tenant must prove that the landlord has knowledge of prior similar criminal conduct occurring on the premises").

### III.   *Holiday Inns, Inc. v. Shelburne*, 576 So. 2d 322 (Fla. 4th DCA 1991)

We revisited *Relyea* in *Shelburne*. In *Shelburne*, the hotel's security guard prevented a patron from parking in the hotel parking lot, so the patron parked in an adjacent lot and proceeded to drink with others at a bar inside the hotel. 576 So. 2d at 324. While returning to their vehicles, a fight erupted among the bar patrons, and three people were shot. *Id.* In

the lawsuit that followed against the hotel, the jury returned verdicts for the plaintiffs. *Id.*

On appeal, we explained the duty of care of a "proprietor of a place of public entertainment . . . to maintain the premises in a reasonably safe condition commensurate with the activities conducted thereon," and that "the proprietor of a bar or saloon is bound to use every reasonable effort to maintain order among the patrons, employees, or those who come upon the premises and are likely to produce disorder to the injury or inconvenience of patrons." *Id.* at 325. The defendants argued that the plaintiffs failed to prove that the defendants had "actual or constructive knowledge of prior, *similar* criminal acts against invitees *on* their property," and that the defendants were not bound to anticipate the criminal act where the wrongdoer was unknown to them and the act occurred precipitously and off the defendants' property. *Id.* (emphasis in original). We rejected this argument, explaining:

> Appellants rely upon this line of cases, specifically *Relyea, Worth* and *Gottschalk*, for the proposition that a landowner must have knowledge of prior, *similar* criminal acts in order to impose a duty to protect invitees from criminal acts of a third person. However, since these cases were decided, the Florida Supreme Court has held differently. *Hall v. Billy Jack's, Inc.*, 458 So. 2d 760 (Fla. 1984); *Allen v. Babrab, Inc.*, 438 So. 2d 356 (Fla. 1983); *Stevens v. Jefferson*, 436 So. 2d 33 (Fla. 1983).

*Id.*[1]

*Shelburne* went on to describe the three Florida Supreme Court cases. In *Stevens*, a bar patron was shot and killed, and his widow sued. 436 So. 2d at 34. She showed numerous fights and shootings had occurred in the bar, the owner had failed to train or equip employees to maintain order, and no security was on duty, but she did not allege that the owner knew of any dangerous propensities of the assailant. *Id.* The supreme court

---

[1] *See Worth v. Stahl*, 388 So. 2d 340, 341 (Fla. 4th DCA 1980) (affirming summary judgment for tavern owner where plaintiff presented no proof that owner knew or should have known of the assailant's violent character); *Gottschalk v. Smith*, 334 So. 2d 102, 103 (Fla. 3d DCA 1976) (where fight erupted between gas station customers, holding trial court should have granted directed verdict in gas station operator's favor because there was no evidence operator knew or could have known of or anticipated attack).

rejected the owner's argument that the widow could not prevail because of this deficit. *Id.*

> [S]pecific knowledge of a dangerous individual is not the exclusive method of proving foreseeability. It can be shown by proving that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron.
>
> To affix liability against a tavern owner for injuries to patrons intentionally inflicted by third parties, a risk of harm to his patrons must be reasonably foreseeable, and the weight of authority, both in this state and elsewhere, supports a standard of reasonable foreseeability. Although knowledge of a particular assailant's propensity for violence is often found to be evidence of foreseeability in these cases, we reject the contention advanced by amicus curiae here that proof of foreseeability should be limited by law to evidence of actual or constructive knowledge of a particular assailant's propensity for violence. A tavern owner's actual or constructive knowledge, based upon past experience, that there is a likelihood of disorderly conduct by third persons in general which may endanger the safety of his patrons is also sufficient to establish foreseeability.
>
> . . . .
>
> It is incumbent upon the plaintiff to prove legal causation. Mrs. Jefferson met her burden by showing that the bar was a "rough" place with a history of fights and gunplay and that the owner had terminated all security service and had left the premises in the charge of a female employee who could not maintain order. Under these facts a jury could determine that a foreseeable risk of harm to patrons existed, that the risk was either created or tolerated by Stevens, that he could have remedied the danger but failed to do so, and that because of that failure to perform his duties Jefferson was killed.

*Id.* at 34-35 (citations omitted).

Next, *Shelburne* described *Allen*. In *Allen*, an assailant in a parking lot of a club threw a glass at the plaintiff and blinded her in one eye. 438 So. 2d at 357. The district court reversed and remanded for entry of judgment for the club owner based on the absence of evidence that the assailant had

8

ever created a disturbance at or near the club. *Id.* The district court also noted the unexpected nature of the attack. *Id.* The supreme court quashed this decision, pointing to *Stevens* and explaining that a tavern owner need not have known of the dangerous propensities of the specific assailant, but rather that knowledge could be shown by proof that "based on past experience, a proprietor knew of or should have recognized the likelihood of disorderly conduct by third persons in general which might endanger the safety of the proprietor's patrons. Foreseeability of an intervening cause is a question for the trier of fact." *Id.* The supreme court noted that the district court had relied on *Relyea,* among other cases, but the supreme court did not denounce or disapprove of *Relyea. Id.*

Third, *Shelburne* addressed *Hall.* In *Hall,* a patron was assaulted by another patron inside of a lounge while watching a pool game. 458 So. 2d at 761. A jury found for the plaintiff and the Second District reversed because no evidence supported that the lounge knew or should have known that the assailant would attack without provocation. *Id.* The supreme court disagreed, again pointed to *Stevens,* and explained:

> A dangerous condition may be indicated if, according to past experience (i.e., reputation of the tavern), there is a likelihood of disorderly conduct by third persons in general which might endanger the safety of patrons or if security staffing is inadequate. These indicia are not exhaustive. If the lounge management knew or should have known of a general or specific risk to Hall and failed to take reasonable steps to guard against that risk and if, because of that failure, Hall was injured, Billy Jack's may be shown to have breached its duty and may be held financially responsible for Hall's injuries. The question of foreseeability is for the trier of fact.

*Hall,* 458 So. 2d at 762.

After summarizing these cases, the supreme court explained that the failure to produce evidence of the "particular risk involved" was not dispositive:

> As illustrated by these three supreme court cases, appellants' argument that they were entitled to a directed verdict because appellees failed to produce evidence of the particular risk involved is without merit. The cases cited in support of this argument, *Relyea, Gottschalk, Gilday,* and *Worth,* all were decided before *Stevens, Allen,* and *Hall* and are not in accord with those cases. Therefore, the conflicting evidence of the

9

Rodeo Bar's inadequate security and fifty-eight police incident reports of problems at the Rodeo Bar, including crimes against persons within the past eighteen months, provided a basis for a finding of foreseeability and precluded a directed verdict.

*Shelburne*, 576 So. 2d at 326–27.

## IV.    Reconciling *Relyea* with *Stevens, Allen, Hall,* and *Shelburne*

The primary question presented by the parties is whether *Relyea* is still good precedent insofar as it holds that, "to impose a duty upon a landowner to protect an invitee from criminal acts of a third person a plaintiff, invitee, must allege and prove that the landowner had actual or constructive knowledge of *prior, similar criminal acts* committed upon invitees." *Relyea*, 385 So. 2d at 1383 (emphasis added).

We hold that *Relyea* remains good law, as it has not been reviewed en banc or overruled by the Florida Supreme Court. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[T]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court." (quoting *Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980))); *Fox v. Fox*, 262 So. 3d 789, 792 (Fla. 4th DCA 2018) (reviewing en banc because "[a] panel of our court has no authority to overrule or recede from our precedent on the same legal issue").

Specifically, *Relyea*'s holding requiring a showing of "prior, similar criminal acts committed upon invitees" is not inconsistent with *Stevens, Allen*, and *Hall*. In those cases, the supreme court did not reject *Relyea*'s holding that an owner has no duty to protect against a sudden attack that the owner has no reason to anticipate or that a plaintiff in such a case must allege and prove that the owner had actual or constructive knowledge of prior, similar criminal acts. Rather, the supreme court rejected the requirement that an owner have "knowledge of a *particular assailant's* propensity for violence," and instead adopted the holding that "[a] tavern owner's actual or constructive knowledge, *based upon past experience*, that there is a likelihood of disorderly conduct by *third persons in general* which may endanger the safety of his patrons is also sufficient to establish foreseeability." *See Stevens*, 436 So. 2d at 35 (emphasis added); *accord Allen*, 438 So. 2d at 357; *Hall*, 458 So. 2d at 761-62. Consistently with *Stevens, Allen*, and *Hall, Relyea* holds that constructive or actual knowledge may be based on prior, similar acts – i.e., past experience – not exclusively on knowledge of the particular attacker's violent propensity. Foreseeability, as it bears on duty, arises from a landowner's knowledge of

10

prior similar conduct, not from the unforeseeable, isolated act of a particular assailant.

Moreover, *Relyea* is distinguishable from and not displaced by *Stevens*, *Allen*, and *Hall* because, in relevant part, *Relyea* addresses foreseeability within the duty element of negligence. *See Relyea*, 385 So. 2d at 1383 ("[T]here being no duty to protect from the type of conduct which occurred here, the trial court correctly entered judgment for the insurance company."). By contrast, in addition to duty, *Stevens*, *Allen*, and *Hall* each address foreseeability as it relates or potentially relates to causation. *See Stevens*, 436 So. 2d at 35; *Allen*, 438 So. 2d at 357-58; *Hall*, 458 So. 2d at 762. As discussed, the foreseeability inquiry within these elements is different. *See McCain*, 593 So. 2d at 502 (holding "duty element . . . focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk'" whereas proximate causation element concerns "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific" resulting injury). The foreseeability analyses are not indiscriminately interchangeable.

Post-*Shelburne*, we and other courts have continued to look to a defendant's knowledge of prior, similar acts in determining whether a duty exists, further demonstrating that *Relyea* remains good law. *See, e.g.*, *Dama Holding LLC v. Guelmes*, No. 3D24-0684, 2025 WL 3466840, at *2 (Fla. 3d DCA Dec. 3, 2025) ("[A] landowner does owe a duty to 'protect an invitee from criminal acts of a third person,' where the invitee proves 'that the landowner had actual or constructive knowledge of prior, similar criminal acts committed upon invitees.'" (quoting *Medina v. 187th St. Apartments, Ltd.*, 405 So. 2d 485, 486 (Fla. 3d DCA 1981))); *Saunders*, 361 So. 3d at 370 ("Baseball Factory's operation of the baseball tournament did not create a foreseeable zone of risk that a physical altercation would occur between a player and an umpire. Saunders did not allege that the player had a known history of violence or that any prior incidents of violence had occurred at these tournaments." (footnote omitted)); *Bryan v. Galley Maid Marine Prods., Inc.*, 287 So. 3d 1281, 1286 (Fla. 4th DCA 2020) (quoting *Relyea* and determining that third party's first attack on invitee was not reasonably foreseeable so as to impose duty where there was no evidence that landowner knew of third party's criminal history or any dangerous propensities); *T.W. v. Regal Trace, Ltd.*, 908 So. 2d 499, 504 (Fla. 4th DCA 2005) ("[F]or the duty regarding third party criminal acts to arise, it must be proven that the landlord has knowledge of prior similar criminal conduct."); *Menendez v. The Palms W. Condo. Ass'n*, 736 So. 2d 58, 61 (Fla. 1st DCA 1999) ("To impose such a duty, the tenant must allege and prove that the landlord had actual or constructive knowledge of prior similar acts committed on invitees on the premises.").

While *Shelburne* wrongly characterized *Relyea*, we need not recede from *Relyea* at this juncture. *Shelburne* correctly relied upon the factually-similar cases of *Stevens, Allen* and *Hall* to hold that the conflicting evidence of the bar's inadequate security and fifty-eight police incident reports of problems at the bar, including crimes against persons within the past eighteen months, provided a basis for a finding of foreseeability and precluded a directed verdict. *Shelburne*, 576 So. 2d at 326. Like *Stevens, Allen*, and *Hall*, *Shelburne* involved a venue with a history of violence or crimes against persons, though not necessarily knowledge of the violent propensity of the particular assailant. While the cases certainly overlap regarding a tavern owner's duty and other premises liability cases, courts treat tavern cases differently. *See, e.g., Burns Int'l Sec. Servs. Inc. of Fla. v. Philadelphia Indem. Ins. Co.*, 899 So. 2d 361, 363-64 (Fla. 4th DCA 2005) (placing "cases which involve a landlord, operator of land, or landowner being sued, based upon . . . a criminal attack by a third party" in a different category than "cases brought against the operators of bars for injuries sustained during criminal attacks in or around the bar"). In the context of this case, *Relyea* controls.

## V. This Case

The general framework for determination of whether a duty exists confirms no duty existed here. The "zone of risk" created by Publix is effectively limited to the fact that it places its customers within a confined space. Publix has a duty to guard against criminal attacks by third parties only insofar as those attacks are reasonably foreseeable. Here, no evidence was presented of prior batteries against a person, let alone shootings, within the Publix at the Crossroads. As in *Relyea*, Publix had no legal duty to anticipate the shooter's criminal activity where the shooter was a stranger to both Publix and the victims, and where the attack occurred precipitously.[2] While a shooting remained within the realm of a conceivable possibility, it was not objectively reasonable for Publix to expect the subject attack. *See Saunders*, 361 So. 3d at 371. There is simply insufficient evidence of foreseeability to establish a duty here. *See Las Olas Holding Co.*, 228 So. 3d at 105 ("It is incumbent upon the courts

---

[2] We further note that the outcome would not change if, as the plaintiffs urge, *Relyea* had been displaced by *Stevens, Allen*, and *Hall*. Applying the *Stevens/Allen/Hall* reasoning, evidence of actual or constructive knowledge "based upon past experience" of a "likelihood" of disorderly conduct that might endanger patrons can establish such a duty. Here, no evidence was presented of any "past experience" of a shooting or any violence upon customers at the Publix at the Crossroads so as to give rise to a "likelihood" that such conduct may occur.

to place limits on foreseeability, lest all remote possibilities be interpreted as foreseeable in the legal sense." (quoting *Macias*, 507 So. 2d at 1115)).

The plaintiffs rely on Publix's adoption of active shooting training for employees and nationwide statistics of shootings as evidence of foreseeability. These arguments fail. Publix's active shooter training did not create a foreseeable zone of risk; it merely showed that Publix was aware of the possibility of an active shooter event somewhere at one of its stores across the country at some point. Second, nationwide statistics of shootings do not establish that it was objectively reasonable for Publix to expect the specific danger of a random act of gun violence at this store. While *Relyea* does not require allegations that prior misconduct occurred in the exact place of the subject attack in order to prove knowledge, *see Eichenbaum v. Rossland Real Est., Ltd.*, 502 So. 2d 1333, 1334 (Fla. 4th DCA 1987), we are not aware of any factually-similar Florida precedent permitting a showing of knowledge based on events that did not even occur within the same city. Accordingly, without more, the evidence relied upon by the plaintiffs cannot support the existence of a legal duty.

In sum, while events giving rise to this case are undeniably tragic, the law imposed no duty on Publix to protect against this unforeseeable criminal act. We affirm the final summary judgment order.

*Affirmed.*

SHAW, J., concurs.
LEVINE, J., concurs specially with opinion.

LEVINE, J., concurring specially.

I fully concur with the majority opinion and the determination that *Relyea v. State*, 385 So. 2d 1378 (Fla. 4th DCA 1980), controls. I write only to discuss one facet of the potential unintended consequences of appellants' argument.

Appellants argue that the tragic shooting, that is the basis of this litigation, was reasonably foreseeable to appellee and, consequently, a duty was created. Appellants allege that the incident was reasonably foreseeable to appellee by the creation of active shooter training, a generalized awareness of the risk of an active shooter, and the generalized increase in gun violence at large, specifically in grocery stores. If that alone would make the incident of gun violence reasonably foreseeable, then it would follow that all stores—large or small—would be required to follow the same "duties" as appellants suggest we adopt.

13

However, appellants contend in their briefs, as well as at oral argument, that any foreseeability, and any resulting duty, would be generally limited only to larger entities like appellee.[3]  But how could one craft such a limitation?  Would not foreseeability, consequently, also be applicable to all stores regardless of size?  We are told that it would not apply to small stores, due to "individual circumstances"—and only to large stores.  But by what legal forbearance, as suggested by appellants, would "Mom and Pop" stores be exempted from the same alleged duty?  I believe the answer is clear.  If large entities were determined to have a duty based on the facts of this case, then eventually all smaller entities would be understood to have foreseen the same risks.

At some point, video surveillance would be required, and then, not long afterwards, active monitoring of those cameras in all stores—whether large or small.  A security guard at the door would potentially develop into having an armed guard.  And the ubiquitous guard would potentially be in every commercial establishment regardless of its size.  These consequences would obviously have an impact on all store owners, and an enormous "unintended" impact on "Mom and Pop" stores.  *See Sewell v. Racetrac Petroleum, Inc.*, 245 So. 3d 822, 827 (Fla. 3d DCA 2017) (weighing "the risks of unintended consequences"); *Miccosukee Tribe of Indians of S. Fla. v. Bermudez*, 145 So. 3d 157, 160 (Fla. 3d DCA 2014) (rejecting appellee's theory, based partly on the "unintended consequences" it would create); *see also State v. Green*, 944 So. 2d 208, 210 (Fla. 2006) (receding from a prior decision based on its "unintended consequences").

Further, consequences of such magnitude, it would seem, are best determined by the people through their representatives in the legislative branch and not by judicial fiat.  Is the judiciary best equipped to make such a wide-ranging decision, with such a potential impact on society as a whole and, specifically, the economy?

---

[3] Appellants deny that the duty would necessarily require "guards" or the installation of "cameras."  Appellants argue that "[b]usinesses can present to juries arguments—comparable to the amicus's arguments—that such measures are ineffective or unreasonably expensive, or that they would not have prevented the attack." (Reply Brief of Appellants at 20).  Further, at oral argument, when asked whether additional security measures—including monitoring, a security guard, and shooter training—would apply to a sole proprietorship, such as a "Mom and Pop" store, appellants responded that it would not "because what is reasonable in terms of security measures will depend on . . . the facts and circumstances of the store at issue and its resources. . . .  And what is reasonable will be determined by a jury."  Oral Argument at 3:03-3:57, 4:21-4:24, https://www.youtube.com/watch?v=bVo31rZ16pA.

Oliver Wendell Holmes, when considering the cost of torts, noted that "[t]he liability for them is estimated, and sooner or later goes into the price paid by the public. The public really pays the damages . . . ." Oliver Wendell Holmes, *The Path of the Law,* 10 Harv. L. Rev. 457, 467 (1897). Holmes later noted that, in general, costs are best determined by legislative action. "Establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial." *Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226 (1908); *see also Claire's Boutiques, Inc. v. Locastro,* 85 So. 3d 1192, 1203 (Fla. 4th DCA 2012) (en banc) (Levine, J., concurring in part, dissenting in part) ("It is axiomatic that the courts are not in the best position to determine the most effective course for the furtherance and extension of public policy as a whole.").

Chief Justice Charles Evans Hughes noted, over a hundred years ago, in words that still ring true today, the limits of judicial action:

> The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance.

*Chicago, Burlington, & Quincy R. Co. v. McGuire,* 219 U.S. 549, 569 (1911).

In summary, we in the judiciary should be mindful of the limitations of our actions, as well as their resulting unintended consequences.

*       *       *

***Not final until disposition of timely-filed motion for rehearing.***